(No. 33255.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOUIS FREEDMAN, Plaintiff in Error.

*Opinion filed December 20, 1954.*

ALBERT HEALY WERNER, of Chicago, (CHARLES D. SNEWIND, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, GEORGE W. SCHWANER, JR., JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and ARTHUR F. MANNING, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Plaintiff in error, Louis Freedman, hereinafter called defendant, was indicted and tried before a jury in the criminal court of Cook County on a statutory charge of taking immoral, improper and indecent liberties with a certain female child of three years of age, in violation of the Criminal Code. (Ill. Rev. Stat. 1953, chap. 38, par. 109.)

His motions for a directed verdict at the close of the prosecution's case and at the close of all the evidence were denied, and a verdict of guilty was returned by the jury. After denying a motion for new trial, the court entered judgment on the verdict and sentenced defendant to imprisonment in the penitentiary for a term of not less than one year nor more than three. Defendant has sued out this writ of error, contending that the evidence fails to establish guilt, that improper evidence was admitted in behalf of the State, that erroneous instructions were given at the request of the State, and that the prosecutor made improper and prejudicial remarks in his argument to the jury.

The evidence discloses that John and Marie Borgen resided, with their three-year-old daughter, Cheryl, in a room on the second floor of a hotel at 4716 North Sheridan Road in Chicago. The room contained, among other furniture, a studio couch used as a sleeping accommodation for all three members of the family. On the night of February 11, 1953, at about ten o'clock, Mrs. Borgen bathed Cheryl and put her to bed on the couch. The child was dressed in a two-piece pajama suit with elastic around the waist, and was placed under the covers. At about twelve o'clock the parents left the room and went to the office of the building on the first floor, where they were offered drinks and remained drinking and dancing until four o'clock in the morning. Before leaving their room they noticed that Cheryl was sleeping, and from time to time during the following four hours one or the other of them went back to see that the child was all right. Each time Marie Borgen visited the room she left the door closed but unlocked.

At four o'clock they returned upstairs, intending to go to bed. The husband proceeded down the hall toward the bathroom, which was shared with other occupants of the building, and Mrs. Borgen went to their room. When she attempted to open the door she found it locked, and called to her husband for the keys, which he threw to her from

down the hall. Upon opening the door she saw defendant, a stranger, lying on the bed with Cheryl. The child was crying, the covers and her pajama bottoms were pulled down, and there were spots over the bed where she had vomited. Defendant was fully clothed except for his shoes and his coat, which had been neatly folded and placed on the floor. The legs of the bed, which were of a folding type, had collapsed, and the foot of the bed was resting on the floor. Mrs. Borgen testified that when she entered the room defendant had hold of his belt at the front and "was kind of pulling it up and tucking his shirt in." Mrs. Borgen seized him and pulled him to a sitting position, demanding to know what he was doing there. Defendant offered no resistance and did not reply. After calling her husband into the room Mrs. Borgen went downstairs to summon the police. Mr. Borgen testified that the child was crying and that she said "He choked me." He further testified that he beat up the defendant and continued striking him until the landlord came in and stopped him.

Louis Cardi, an interne at the American Hospital who was licensed to practice medicine in Italy but not in any State of the United States, testified, over objection, that on February 12, 1953, he made an examination of Cheryl's external genital organs and that the examination disclosed an inflammatory state consisting of redness, slight swelling, heavy tenderness and pressure of the vulva with a little tear in the right edge, on the inferior quadrant of the hymen, which looked like a recent traumatic tear.

The defendant, a man thirty-eight years of age, testified that some twelve years ago he had resided in a room on the second floor of the hotel in question. On February 11, 1953, he was employed at a sandwich shop as a short-order-grill man. At about 10:15 o'clock that night he left his place of employment and went to a tavern, where he drank some beer and a few shots of whiskey and also purchased a half-pint bottle of whiskey. From there he suc-

cessively visited some six other taverns, consuming beer and whiskey and drinking from the half pint of whiskey. He went to the restaurant where he was employed, and met one Ignatius Rollins. He mixed whiskey from his bottle with Coca Cola and had three or four drinks of this mixture in the back of the restaurant. He then left in the company of Rollins and went to an elevated transit station, where he took an elevated train to the Chicago "Loop." There he visited several more taverns, where he continued drinking beer and whiskey. In one of them he purchased a second half pint of whiskey, which he mixed with Coca Cola and consumed while waiting for an elevated train. Defendant testified further that after drinking in several other taverns, "the next thing I remember is when somebody was putting some kind of smelling salts over me at the hospital;" and that he had no recollection of entering the hotel room or lying in bed with a little girl.

Rollins testified that when he saw defendant at the restaurant defendant was intoxicated and noisy, that he fell off the stool on which he was sitting; that he staggered and did not talk well; and that the witness tried unsuccessfully to take defendant's bottle from him. The complaining witness, Mrs. Borgen, testified on cross-examination that when she found defendant in her hotel room she noticed the odor of liquor on his breath, that he "acted as though he was more or less stunned or dazed," and that he did not say anything to her. Louis Cardi, the interne at the hospital to which defendant was taken from the hotel room, testified that from observing defendant's walk, speech, eyes, and general appearance, he determined defendant had been drinking and his condition was "not so fair."

Defendant contends that there is no evidence he took or attempted to take any immoral, improper or indecent liberties with the child with the intent of arousing, appealing to or gratifying his lust or passions or sexual desires; and that the conviction rests solely upon suspicion, guess and

conjecture. The position cannot be sustained. It is undisputed that defendant was found in bed with the child; that her pajamas had been pulled down; and that her female organs were inflamed and slightly injured. While no one saw defendant commit any improper or indecent act upon the child, the circumstances are so strong as to leave no reasonable doubt of it.

Defendant next insists that the evidence shows he was intoxicated to such a degree as to be unable to form an intent, and that since specific intent is an essential element of the crime charged his guilt was not proved beyond a reasonable doubt. The statute defining the offense requires that the act be done "with the intent of arousing, appealing to or gratifying the lust or passions or sexual desires, either of such person or of such child, or of both such person and such child." (Ill. Rev. Stat. 1953, chap. 38, par. 109.) Thus a specific intent is made an ingredient of the crime. In such cases it is proper for defendant to offer evidence to prove he was intoxicated to a degree rendering him incapable of entertaining the specific intent. While voluntary intoxication affords no excuse for crime, an offense which is by law made to depend upon the state or condition of the mind of the accused cannot be committed by one who is incapable of forming the specific intent. (See *People v. Klemann,* 383 Ill. 236, 239.) The question presented in the case at bar, therefore, is whether the extent of defendant's intoxication was so great that he was unable to form the intent essential to the crime charged.

To refute defendant's contention the State points to the facts that defendant was able to remember visiting approximately seventeen taverns, the last three or four being in the neighborhood where the crime was committed, and that he had sufficient mental capacity to carefully fold his coat, place his hat upon it and remove his shoes before getting into the bed. The record also discloses testimony that defendant was questioned at the police station about

an hour after he was apprehended in the hotel room; that in response to questions by a police officer he stated he had about forty-one or forty-two dollars in his pocket; and that his pockets in fact contained forty-one dollars and some change. At that time he gave his name and address and recited from memory his social security number, in reply to questions by the police officer. While it is evident from the record that defendant was intoxicated, we think that under the facts and circumstances shown the determination of whether he was so intoxicated as to not know what he was doing, and lacked a mind sufficient to form an intent, was for the jury. It is the function of the jury to weigh the testimony and determine the credibility of the witnesses. The verdict in the case at bar is sufficiently supported by the evidence.

Defendant next contends the trial court erred in permitting Louis Cardi, the interne at the American Hospital, to testify that in his opinion the condition of the child's hymen as found in his examination could have been caused by the insertion of a male sexual organ. It is argued that there is no evidence the injury was occasioned in this manner, and that the testimony invaded the province of the jury and created a prejudice against defendant. There is no merit in the contention. The opinion was based solely upon the witness's physical examination of the child, and made no reference to the circumstances under which the act took place or to other elements essential to the crime charged. The court did not err in admitting the evidence. *People* v. *Ardelean,* 368 Ill. 274.

It is contended the court erred in giving instructions Nos. 12, 8 and 9 to the jury at the request of the State. Instruction No. 12 advised the jury in substance that if any witness wilfully testified falsely "to any fact material to the issue in this case" the jury might disregard entirely the testimony of such witness except in so far as corroborated by other credible evidence or by circumstances in evi-

dence. Instruction No. 8 advised the jury that if from all the evidence they believed beyond a reasonable doubt that defendant "committed the crime of which he is accused * * * then it is your duty under the law to find him guilty * * *." Instruction No. 9 told the jury that "to constitute the offense charged in this case" the intent alleged in the indictment is necessary to be shown. The objection to each of the instructions is that the court did not define the offense charged or the material issues in the case. Defendant argues that it was therefore impossible for the jury to know what facts were material, and that the challenged instructions permitted the jury to guess or speculate as to what crime was charged. The contention must be rejected. Instructions Nos. 2 and 3, given to the jury, defined the elements necessary to constitute the crime charged and fully informed the jury of the material issues in the case, including the question whether defendant was so intoxicated as to be incapable of forming an intent of arousing, appealing to·and gratifying his lust, passions and sexual desires. It is not necessary that the definition of the offense, or of the material matters involved in the cause, should be contained in the challenged instructions. It is sufficient if the instructions, when read and considered as a series, define and set out every material element necessary to be proved in order to convict the defendant on the charge. (*People* v. *Langer,* 384 Ill. 608.) The court did not err in giving the instructions to which defendant objects.

It is finally insisted that error was committed in allowing the prosecutor, in his closing argument to the jury, to assert that defendant's testimony concerning his drinking was given at the instigation of his attorney. The prosecutor, in referring to the evidence of defendant's visits to taverns, argued as follows: "You know that that wasn't done. You know that he is lying now when he says it was done; that he went into the parade—that is, after he talked to the clever lawyer who knew one of the excep-

tions to the general rule about drunkenness being no excuse, who knew that in a specific intent case drunkenness is an excuse if he is so drunk that he can't form that specific intent. Oh, no, after talking with that clever lawyer * * * It was after he talked to a lawyer then that we begin that parade of taverns and the parade of whiskey drinking and the beer drinking. That was the only hope, because he was caught red handed. His only hope was that, his only out was to convince the jury that he was so drunk that he couldn't form the specific intent." Repeated objections to this line of argument were overruled by the court. The remarks of the prosecutor were improper and highly prejudicial, and their probable effect upon the jury was aggravated by the action of the court in overruling defendant's objections. Arguments of a prosecutor which charge a defendant's counsel with attempts to free his client by trickery tend to deprive the accused of a fair trial and should not be permitted. (*People* v. *Savage,* 358 Ill. 518.) The very nature of cases of this kind requires the exercise of extreme care in preventing improper and prejudicial argument which might deprive an accused of that fair and impartial trial to which everyone, whether guilty or innocent, is entitled. The evidence in the case at bar was close and highly conflicting on the issue whether defendant was so intoxicated as to be unable to form the required intent, and the jury could well have reached a different verdict from a consideration of such evidence in the light of the unusual circumstances disclosed by the record. It is impossible for us to say on this record that defendant was not prejudiced by the argument in question, and a new trial will therefore be granted.

The judgment of the criminal court of Cook County is reversed, and the cause remanded to that court for a new trial.

*Reversed and remanded.*