Bertha Malman and Phyllis Breger, Executors of the Estate of Samuel A. Malman, Hubert C. Hansen and Marie Hansen, His Wife, Edward R. Brady and Lilly V. Brady, His Wife, Plaintiffs-Appellants, v. Village of Lincolnwood, a Municipal Corporation, Defendant-Appellee. Harold Weinstein, Intervenor.

### Gen. No. 50,195.

First District, First Division.
June 30, 1965.

Maurice J. Nathanson and Joseph J. Witry, of Chicago (Allen Hartman, of counsel), for appellants.

Louis Ancel, of Chicago (Ancel, Stonesifer & Riley, Francis X. Riley, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiffs seek a declaratory judgment that a Lincolnwood zoning ordinance is void as it applies

to plaintiffs' premises. Plaintiffs' direct appeal to the Illinois Supreme Court from an order which dismissed their cause at the close of plaintiffs' case has been transferred to this court for disposition.

 The sole question for review is the sufficiency of plaintiffs' evidence to establish a prima facie case for a declaratory judgment against the defendant Village of Lincolnwood. As said in Anderson v. Board of Education, 390 Ill 412, 61 NE2d 562 (1945), at p 428:

> "A motion to find for the defendant in a trial before the court without a jury concerns solely the sufficiency of the evidence to sustain a finding against the defendant and, therefore, raises only a question of law. The allowance of the motion, however, is not an adjudication of the issues of fact."

See, also, Kovac v. Ducharme, 2 Ill App2d 80, 82, 118 NE2d 629 (1954).

The subject property is ten adjoining vacant lots in the Village of Lincolnwood, Illinois. The lots, numbered 1 to 10, are located along the north side of Touhy Avenue, between Tripp Avenue on the east and Kildare Avenue on the west, with an east-to-west Touhy frontage of 262 feet, extending 125 feet to a 16-foot wide public alley on the north, or rear property line, containing approximately 32,750 square feet.

The record reveals that the *north* side of Touhy Avenue, on which the subject property fronts, is developed as follows. The block directly *west* of the subject property is unimproved. To the west of that block, commencing at Lowell, is an automobile filling station, to the west of which is a card shop, followed by a flower shop at the corner of Touhy and Kostner Avenues. The block further west, between Kostner and Lincoln Avenues, is occupied by a large restaurant. Continuing westward along the north side of

57

Touhy Avenue, west of Lincoln Avenue, is the Hyatt House, a motor hotel and restaurant, to the west of which is the E. I. DuPont DeNemours Photo Products Company, a one-story structure housing offices and storage facilities.

To the *north* of the subject property, across the 16-foot public alley, and for four blocks to the *east* of the subject property on the *north* side of Touhy Avenue, are *single family residences.*

On the *south* side of Touhy Avenue, *directly across* from the subject property, is the Ansco Photo Products Company, a large factory-type, ranch structure, housing office, storage, and distribution facilities. On the east side of this structure are three loading docks. Directly west of the Ansco plant, on the south side of Touhy Avenue, is the Interstate Vending Company, an office and wholesale distribution facility. The next use to the west, running to Kostner Avenue, is a miniature golf course. On the southeast corner of Touhy and Lincoln Avenues is an automobile filling station. Continuing westward on the south side of Touhy Avenue, to the west of Lincoln Avenue, is a vacant lot followed by the Haynes Lithographing Company plant.

On the south side of Touhy Avenue, extending east from the Ansco plant, are single family residences.

The record indicates that Touhy Avenue is a "heavy-traffic" section line street, running from Lake Michigan on the east, through the City of Chicago, through Lincolnwood, Niles, Park Ridge and Des Plaines, until it reaches its western terminus at O'Hare International Airport. The evidence shows that the principal uses on Touhy Avenue are business or commercial, with some manufacturing, 75% of its total length devoted to these uses; 25% is residential, "very little" of which is devoted to single family use.

58

Under the original zoning ordinance adopted by the Village of Lincolnwood in 1927, plaintiffs' property was within a "C" single family dwelling district. On December 20, 1962, a comprehensive amendment to the zoning ordinance of the Village of Lincolnwood was adopted, and the subject property was placed in an R3 single family residence district, within which it is presently situated. (While this amendment was being considered, plaintiffs' petition for rezoning of their property from the "C" single family dwelling classification to the "F" commercial classification was pending. This petition was subsequently denied.)

Under the 1962 amendment, the vacant property fronting on the north side of Touhy Avenue, immediately to the *west* of the subject property, and the property for many blocks further west, is zoned "B1 Restricted Business District." The property immediately *south*, across Touhy Avenue, and for many blocks west, is also zoned "B1." The property to the *east* and to the *north* of the subject property is zoned "R3 Single Family Residence District." The plaintiffs' business or commercial uses are not permitted in the R3 district, but are permitted in a B1 district.

The only evidence offered and received in this case was that introduced by plaintiffs. Alan I. Rubens, a licensed real estate broker, manager and appraiser on the north side of Chicago and in the northern suburbs, testified for the plaintiffs, in substance, that the subject property and the block to the west are quite similar in character; that the highest and best use of the subject property would be a business use; that if the subject property were used for business purposes it would have a value of $450 per front foot (or $117,900), but if restricted to single family residence purposes, the value of the property would be $200 per front foot (or $52,400); and that a business use

59

on the property would have no adverse effect on nearby residential properties.

Also testifying for plaintiffs was George H. Kranenberg, a zoning and planning consultant who had participated in the practice of city planning at the Federal, State and local levels, serving as Deputy Director and as Technical Director of the Chicago Plan Commission. He was familiar with the area in which the subject property is located and had personally examined the land uses in the vicinity, having prepared a land use zoning map for plaintiffs (Plaintiffs' Exhibit 25). He testified that the subject property and the block directly to its west are of the same character. In his opinion, the highest and best use of the subject property would be for business-type uses. He testified: "The subject site is an integral part of this business, commercial, manufacturing complex that we find on Touhy Avenue, both on the north and south sides, running from Tripp on the east, down the length as it proceeds to the village limits . . . . To literally carve the subject site out of this complex and put it into a single family district is not rational planning or rational zoning as it relates to the uses. . . . In my opinion, the subject property zoning should be for retail and business-type use."

On cross-examination, Kranenberg testified: "The subject property is identified with the commercial development across the street and not the single family development, because this block forms an integral part of the commercial business district to the south and to the west of the subject site. . . . This block is an integral part both by relationship of use and planning of the area to the west."

Edward Brady, one of the plaintiffs, testified that in 1959 he began acquiring the various lots of the subject property which he now owns. He knew when he bought the property that he could not build his

proposed use, a restaurant, on it, "not under the present zoning."

Other evidence submitted by plaintiffs consisted of deeds, plats of survey, photographs, and use and zoning maps.

At the close of plaintiffs' case, defendant's and an intervenor's motion to dismiss the action was granted. From this judgment plaintiffs appeal.

Plaintiffs contend that the evidence they introduced "dissipated the presumptive validity of the Lincolnwood Zoning Ordinance and that said evidence demonstrates that the ordinance bears no substantial relation to the public health, safety, morals and welfare . . . . There being no evidence offered in support of the Lincolnwood Zoning Ordinance, the trial court erred in dismissing the action."

Plaintiffs pray, alternatively, that the judgment order be reversed and relief granted plaintiffs in accordance with the prayer of their amended complaint, *or* that the judgment be reversed and the cause remanded with instructions to vacate the judgment order, to reinstate plaintiffs' case, to allow plaintiffs' evidence to stand, and to proceed with the trial of this cause.

The defendant, Village of Lincolnwood, contends that "[t]he Court below properly held that the plaintiffs had failed to prove that the ordinance in question was arbitrary and capricious," citing, among other, Elmhurst Nat. Bank v. City of Chicago, 22 Ill2d 396, 401, 176 NE2d 771 (1961), and Hartung v. Village of Skokie, 22 Ill2d 485, 177 NE2d 328 (1961), and that "taking the plaintiffs' proofs at full value and all reasonable inferences from them, at most it shows that the action of the legislative body was debatable," citing Exchange Nat. Bank of Chicago v. County of Cook, 25 Ill2d 434, 185 NE2d 250 (1962).

61

■ ■ As was said in Kanefield v. Village of Skokie, 56 Ill App2d 472, 206 NE2d 447 (1965), at p 476:

"The rules which govern the validity of zoning ordinances are clearly settled. Zoning ordinances are presumed to be valid. Those who challenge the validity of a zoning ordinance must show by clear and convincing evidence that the ordinance is arbitrary, unreasonable and that it does not bear a reasonable relation to the public health, safety, comfort or welfare. Where it appears from all the evidence that room exists for a difference of opinion concerning the reasonableness of the zoning classification, the legislative judgment must be conclusive. Urann v. Village of Hinsdale, 30 Ill2d 170, 195 NE2d 643. Krom v. City of Elmhurst, 8 Ill2d 104, 133 NE2d 1."

■ As was said in Hartung v. Village of Skokie, 22 Ill2d 485, 494, 177 NE2d 328, cited by both parties:

"Equally well established are these significant factors in determining the validity of a given zoning of limitation: the character of the neighborhood; the extent to which the value of the subject property is diminished by the limitations; the extent to which the removal of the limitation would depreciate the value of other property in the area; the suitability of the property for the zoned purposes; existing uses and zoning of nearby property; the length of time under the existing zoning that the property has remained unimproved, considered in the context of land development in the area; the relative gain to the public as compared to the hardship imposed on the individual property owner; and the extent to which the ordinance promotes the health, safety,

morals or general welfare of the public. . . . No one factor is controlling but each must receive due consideration. . . ."

■ We believe that the plaintiffs in this case have sustained their burden of producing the "clear and convincing" evidence necessary to establish, as a prima facie matter, the invalidity of the ordinance in question as it applies to the subject property. The plaintiffs introduced evidence as to the character of the neighborhood, the existing uses and zoning of nearby property, the effect of the present zoning on the subject property's value, and as to the other "significant factors" employed in determining the validity of a zoning restriction. (Hartung v. Village of Skokie, 22 Ill2d 485, 494, 177 NE2d 328.) This evidence demonstrates, *in the absence of contrary proof,* that the relative gain to the public is slight as compared to the hardship imposed on the plaintiffs, the individual property owners, and also demonstrates, *in the absence of contrary proof,* that the ordinance, as it applies to the subject property, does not substantially promote the health, safety, morals or general welfare of the public. (Hartung v. Village of Skokie, 22 Ill2d 485, 494, 177 NE2d 328; First Nat. Bank & Trust Co. of Evanston v. County of Cook, 15 Ill2d 26, 31, 32, 153 NE2d 545 (1958).) Although the defendant availed itself of the opportunity of cross-examination of plaintiffs' witnesses, it did not introduce any evidence to controvert that of the plaintiffs.

■■ We hold, therefore, as a matter of law, that it was improper in this case to dismiss plaintiffs' action after hearing their evidence only. Consequently, the trial court's judgment must be reversed and the cause remanded for further proceedings. John Deere Plow Co. of Moline v. Carmer, 350 Ill 104, 108, 182 NE 762 (1932); Reiter v. Ill. Nat. Cas. Co., 397 Ill

63

141, 152, 73 NE2d 412 (1947), cert den 332 US 791; Wiedrich v. Howard, 7 Ill2d 589, 591, 131 NE2d 508 (1956). As is stated in 3 ILP, Appeal and Error, § 998, p 249:

"On remand after reversal of a judgment or decree for defendant on his motion at the close of plaintiff's case for a finding in his favor or for a dismissal, defendant is entitled to offer testimony in defense of the action."

See, also, 3 ILP, Appeal and Error, § 955, p 200 et seq.; Ill Rev Stats c 110, § 64(4).

We have not commented extensively on plaintiffs' evidence so that the trial court's determination of the merits of this cause not be restricted by our view of the factual circumstances from a record in which only the plaintiffs' evidence appears.

For the reasons given, the judgment of the trial court is reversed, and the cause is remanded to the trial court "with directions to proceed as though the motion had been denied by the trial court or waived."

Reversed and remanded with directions.

BURMAN, P. J. and KLUCZYNSKI, J., concur.