**Lawrence Larson, Plaintiff-Appellant, v. Marvin D. Harris, Jr., Defendant-Appellee.**

**Gen. No. 66–11.**

Second District.

December 30, 1966.

Asher, Greenfield, Gubbins and Segall, of Chicago, for appellant.

Maynard, Maynard & Brassfield, of Rockford, for appellee.

MR. JUSTICE RATHJE delivered the opinion of the court.

This is an action brought in the Circuit Court of the 17th Judicial Circuit, Winnebago County, by Lawrence Larson to recover for personal injuries sustained in an accident while riding in defendant's automobile. The cause

was tried by a jury. At the close of the plaintiff's case, and on motion of the defendant, the court directed a verdict in favor of the defendant. Plaintiff contends on appeal that there was sufficient evidence in the record for the plaintiff to submit the case to the jury and seeks a reversal and a new trial. It appears from the record that no post-trial motion was filed by the plaintiff before appealing to this court.

The complaint as amended charged that on April 7, 1961, defendant, Marvin D. Harris, was operating an automobile in a westerly direction on U. S. 30; that the plaintiff was riding with him as a passenger; that the plaintiff was free from contributory wilful and wanton misconduct; and that the defendant was guilty of wilful and wanton misconduct by driving across a marked highway, traveling approximately 250 feet off the pavement, down an embankment and stopped across a creek.

Defendant's answer as amended denied the charges of wilful and wanton misconduct, and denies that the plaintiff was free from wilful and wanton misconduct.

The evidence showed that the accident occurred on U. S. Route 30, about two miles from its intersection with Route 51. U. S. 30 is a two-lane blacktop road approximately 22 to 24 feet wide with a white and black median strip. The highway where the accident occurred has a gravel shoulder about 4 feet wide, with the remainder of the embankment grass.

On April 7, 1961, the defendant, a resident of Rockford, was driving an automobile owned by his father's firm. Early in the evening he met the plaintiff and together they went to a hospital in Rockford to meet Janet Rewerts, a friend of the plaintiff. The three left Rockford, drove along Route 51 to Rochelle, Illinois, where they met Merietta King, a friend of the defendant. The four, with the defendant driving, then proceeded from Rochelle to De Kalb, Illinois, where they decided to attend a univer-

sity dance. Instead of attending the dance, they went to a restaurant located at the east end of De Kalb.

After remaining at the restaurant for approximately one-half hour, they decided to return to Rochelle. As they started the defendant was driving, Merietta King was in the right front seat, the plaintiff in the back seat behind the defendant, and Janet Rewerts sitting on his right. They traveled some back roads until they came to Route 23 where they proceeded south to U. S. Route 30.

The defendant stated that his car was in good working condition, his lights were on, his brakes were in good working order, and he estimated his speed at between 50 to 60 m.p.h. before he reached U. S. Route 30. He stopped at the stop sign at the juncture of Route 23 and U. S. Route 30 and then made a right turn onto U. S. Route 30. He stated that the pavement on the U. S. Route 30 was dry, the weather was nice and the visibility good. He states he has no recollection of the events surrounding the accident nor his speed on U. S. Route 30, but did state that he did not fall asleep, that the passengers were behaving themselves.

A state trooper stopped shortly after the accident while cruising along U. S. Route 30. When he arrived he saw a 1955 Chevrolet tudor hardtop off the road down the embankment and across a small creek. The car was on the south side of the roadway, or the opposite side of the road from where the defendant was traveling. He stated that the car left the road 249 feet from where the car stopped and based this fact on the tire marks which left the roadway and led directly to the car.

██  One of the issues arising out of this case is the effect of the plaintiff's failure to file a post-trial motion after an order had been entered directing a verdict for the defendant at the close of the plaintiff's case. The purpose of a post-trial motion is to give the trial court an opportunity to correct any errors in the trial before the

jury. It is the opinion of this court that an appeal may be taken where a court directs a verdict, although no post-trial motions were made. When a judge directs a verdict at any stage of the trial, in effect, he has removed the case from the realm of the rules relating to jury cases and the rules applicable to bench trials should apply. It seems illogical to require a party to address the same arguments to the same judge on the identical questions before proceeding to review by an appellate tribunal. Insofar as the opinion herein expressed is contradicted by the opinion contained in Malcomson v. Bennett, 69 Ill App2d 281, 216 NE2d 249 (1966), that opinion is over-ruled.

The primary question on appeal is whether the trial court erred in directing a verdict for the defendant at the close of the plaintiff's case. When a motion for a directed verdict is made by the defendant at the end of the plaintiff's case, the trial court must consider all the evidence in its aspect most favorable to the plaintiff, together with all reasonable inferences to be drawn therefrom, and, if when so considered, there is any evidence standing alone and considered to be true, together with the inferences which may legitimately be drawn therefrom which fairly tend to support the plaintiff's case, the court should not direct a verdict in favor of the defendant. LaSalle Nat. Bank v. Wieboldt Stores, Inc., 60 Ill App2d 188, 205, 206, 208 NE2d 845 (1965). A motion for a directed verdict for the defendant presents the single question whether there is in the record any evidence which, standing alone and taken with all its intendments most favorable to the plaintiff, tends to prove the material elements of the plaintiff's case. Lindroth v. Walgreen Co., 407 Ill 121, 130, 94 NE2d 847 (1950). Questions of any purported impeachments, weight or quality of testimony, or credibility of witnesses are not involved on a motion for a directed verdict. Moldenhauer v. Krynski, 62 Ill App2d 382, 386, 210 NE2d 809 (1965).

434

Many decisions by courts of this state favor the position that the question of the existence of wilful and wanton misconduct on the part of either the plaintiff or the defendant is preeminently a question for the jury and should be only rarely ruled upon as a matter of law. In Lessen v. Allison, 25 Ill App2d 395, 166 NE2d 806 (1960), the court stated at pages 401, 402:

> "The more recent cases of the Supreme Court of this state indicate that it is the exceptional case wherein it can be said that the question of wilful and wanton misconduct on the part of the driver or contributory wilful and wanton misconduct on the part of the guest is not a question of fact for the jury."

In Rosbottom v. Hensley, 61 Ill App2d 198, 209 NE2d 655 (1965), in a suit by a guest passenger, the defendant driver, while traveling at 20 to 25 miles per hour on a wide level street, turned her head to glance at a back seat passenger and struck a tree. In rejecting the defendant's contention that, as a matter of law, one cannot be guilty of wilful and wanton misconduct unless they have actual knowledge of the pending danger, the court stated at page 211:

> "The Illinois courts have held that if there is any evidence in the record tending to show such a gross want of care as indicates a wilful disregard of consequences, it is a question of fact for the jury. Walldren Express & Van Company v. Krug, 291 Ill 472, at 476, 126 NE 97. While this opinion did not relate to the situation of a guest under the statute, that language has been employed in guest cases. Johnson v. Chicago & N. W. Ry. Co., 9 Ill App2d 340 at 355, 132 NE2d 578."

In Augustine v. Stotts, 40 Ill App2d 428, 189 NE2d 757 (1963), a guest statute case, the defendant driver made a left turn and was struck by an oncoming automo-

bile. In appealing a jury verdict for the plaintiff, one of the defendant's contentions was that the trial court should have directed a verdict for the defendant. In rejecting this argument, the court stated at pages 430, 431:

"The facts were such as to raise a question of fact for the jury as to whether defendant was guilty of wilful and wanton misconduct either in seeing the oncoming automobile and wilfully, wantonly, or recklessly attempting to race across the highway ahead of such automobile, or being guilty of wilful and wanton misconduct in failing to look and discover the oncoming automobile on the state highway."

■ In the instant case, the evidence established that the U. S. Route 30 was smooth, the pavement dry and the visibility good. The defendant testified that he was the driver of the car; that his car and brakes were in good operating condition; that he was not asleep; that he was traveling between 50 and 60 miles per hour on U. S. Route 30; and that the passengers were behaving themselves. He had no recollection of the events immediately surrounding the accident. The plaintiff had no recollection of the events after leaving the dance hall. The state trooper who came upon the scene shortly after the accident testified that the defendant's car had crossed the median strip; that the car traveled 249 feet on the south or opposite shoulder from where it left the highway; and that the car stopped at the bottom of an embankment across a small creek facing west and headed into the west bank. It is our opinion that there was sufficient evidence to submit the case to the jury on the question of the defendant's wilful and wanton misconduct. For this reason the directed verdict of the trial court is reversed.

Reversed and remanded.

ABRAHAMSON and MORAN, JJ., concur.