THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *v.* JOHN HIBBLER,
Defendant.

(No. 69-49;

Fifth District—September 7, 1971.

*Rehearing denied October 1, 1971.*

MORAN, J., dissenting.

Paul Bradley, of Defender Project, of Mt. Vernon, (Kenneth L. Jones, of counsel,) for appellant.

R. W. Griffith, Jr., State's Attorney, of Edwardsville, for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

John Hibbler, defendant, was convicted of forgery in a jury trial in the circuit court of Madison County and was sentenced to the penitentiary for a term of not less than six nor more than fourteen years. On appeal he contends that the trial court erred in refusing to allow him to present an in-court sample of his handwriting for comparison purposes and in refusing to allow a witness to testify as to the witness' personal amnestic experiences as a chronic alcoholic. In addition he contends that he was not proven guilty beyond a reasonable doubt and that his sentence was excessive.

From the state's evidence it appears that on January 16, 1968 the defendant presented a check to the First National Bank of Madison in the amount of $355.55 representing himself to be the payee, Charles E. Dandridge, and requesting that part of it be paid to him in cash and the remainder placed in a savings account which he wished to open. Frances Brown, a teller, testified that the man who endorsed the check with the payee's name was not known to her and since he had no identification

she referred him to Mr. Gitcho, the executive vice-president of the bank. On cross-examination she stated that the man seemed to be possessed of normal faculties, that he did not appear to be intoxicated though she did notice a smell of alcohol on his breath, that she noticed nothing queer or strange about his manner, that she did notice he had misspelled the payee's name but that this was not particularly unusual as she had observed others make spelling errors while endorsing checks which she attributed to nervousness. James A. Foley, a bank auditor, identified defendant as the man who represented himself as Dandridge. He testified that defendant looked familiar, that he accepted his representation that he was Dandridge and so assured Mr. Gitcho who then authorized cashing the check; that suddenly he realized defendant was not Dandridge so he delayed any further action until the police were called and defendant was arrested. Charles E. Dandridge testified that the check was from an insurance company which he expected to receive in the mail, that he was not personally acquainted with defendant but that he knew of him and his family; that he had not given any authority to cash the check and did not know how it came into his possession. He further stated that the endorsement looked a lot like his signature but that he knew it was not as he would not have misspelled his own name.

Testifying for the defense, Jewell Dandridge, a brother of the payee, stated that he had known defendant for thirty years, that he and defendant had been out all night drinking at various taverns, that at about ten o'clock in the morning he had gone to the post office to pick up the Dandridge family mail and after returning to the tavern and rejoining defendant he had forgotten the letters and left them near the defendant. The defendant testified that he remembered he had been out drinking with Jewell Dandridge all afternoon and all night and that he remembered Jewell leaving for a while and coming back but that he had no recollection whatsoever of the check in question or even going to the bank. At this point defense counsel's offer to have defendant write the name of the payee for comparison purposes was refused by the court on the grounds it would be self-serving.

William Lawning, a social worker at the Alcoholic Treatment Center of Alton State Hospital, testified that he first met defendant at the hospital on March 15, about two months after the check incident. In his opinion defendant was a chronic alcoholic when admitted to the hospital and that this condition had existed for an indeterminate period prior thereto. It was also his opinion, based on a hypothetical question, that defendant, as an alcoholic, could have endorsed the check and engaged in the activities described at the bank without having any present memory of such events, but he admitted that he had no knowl-

edge as to whether or not a chronic alcoholic could act knowingly and intentionally. Myron Wood, a furnace repairman and president of a House of Good Hope, (Halfway House for alcoholics) was offered as a witness and objected to by the State. After his offer of proof revealed that he would testify that he was a former alcoholic and that on three separate occasions he too had engaged in activities over a day and more of which he had no recollection, his testimony was refused by the court as having no relevancy. The vice-president, Mr. Gitcho, testified on defense that he had first authorized cashing the check on the assurance of Mr. Foley that he recognized the defendant as the payee named, but that he withdrew his authorization when Mr. Foley changed his mind. He also testified that the records of the bank revealed that defendant had previously been a depositor in the bank.

 Defendant first argues that the trial court committed reversible error in refusing to allow the jury to compare defendant's in-court writing with the alleged forged endorsement. He argues that if the payee can be permitted to sign his name so that the jury could compare it with the endorsement, then to refuse defendant the same privilege gives rise to a double standard. In addition, as authority for his contention, he cites Ill. Rev. Stat., ch. 51, par. 50, which reads: "In all courts of this state it shall be lawful to prove handwriting by comparison made by the witness or jury with writings properly in the files or records of the case, admitted in evidence or treated as genuine or admitted to be genuine, by the party against whom the evidence is offered, or proved to be genuine to the satisfaction of the court." Defendant misconstrues the meaning of the statute. Its purpose is to permit a sample of handwriting for comparison purposes where there can be no question of its genuineness. As stated in 29 Am.Jur.2d, Evidence 810, "* * * It is only when a writing is written, not by design but unconstrainedly and in the natural manner of the writer so as to bear the impression of the general character of his chirography as the involuntary and unconscious result of constitution, habit, or other permanent cause, that it furnishes any satisfactory test of genuineness." Here, there is no question that the payee did not endorse the check, rather it is the defendant, who in effect denies the endorsement. Under such circumstances the rule is clear that defendant had no right to offer in evidence as a comparison some writing of his which he made after the controversy over the signature arose. To permit such evidence to go to the jury would amount to nothing more than giving defendant an opportunity to fabricate evidence for himself by changing the style and character of his handwriting so as to deceive the jury. (*See People v. Rosenbaum,* 299 Ill. 93; *Shinn v. Settle,* 222

Ill.App. 428.) Nor was such evidence admissible for the purpose of showing that defendant was under some degree of intoxication at the time he signed the check, for care in writing in one instance and carelessness or clumsiness in another proves nothing. We therefore find that the trial court's denial of defendant's in-court handwriting speciman was proper.

Next defendant contends that the State did not prove beyond a reasonable doubt that it was he who tried to pass the forged check, or, that if he did endorse the check, there was no proof that he did so with intent to defraud, the contention being that his act was not one of free will but was the result of an alcohol induced amnesia. Tied in with the latter argument is the contention that the court erred in not permitting a witness to testify as to his own personal amnestic experiences as an alcoholic. From the record it is undisputed that defendant did represent himself as the payee and that he did endorse the check with the payee's name. He does not seriously deny this, rather he merely says he does not remember it. His argument appears to be that because he now suffers from amnesia concerning the incident he therefore was not responsible for his acts. Such a conclusion finds no support whatsoever in the record, and we believe it to be wholly unwarranted. Memory failure of greater or lesser degree is not uncommon following a heavy drinking spree, whether or not the person is a chronic alcoholic. Without any medical opinion to the contrary it would seem obvious that amnesia is an aftereffect of drinking and not the causation of acts committed while drinking. It is undoubtedly on such reasoning that the trial court excluded testimony of another alcoholic's amnestic experiences and we find no error in such ruling.

The real question, though only indirectly argued, would appear to be whether chronic alcoholism deprives a person of his free will so as to incapacitate him from forming the requisite intent to commit the crime of forgery. No medical testimony was offered by defendant, and the only evidence touching on the subject was that of the social worker who testified that he had no knowledge one way or the other as to whether a chronic alcoholic could act knowingly or intentionally. We are aware that chronic alcoholism as a disease is presently under serious study by the medical profession, but until the results of such study are completed and brought to our attention we cannot conclude that alcoholism is a form of insanity which entirely deprives an individual of his free will thereby negating such intent as may be necessary to prove a crime. At this point in time we conclude that proof of chronic alcoholism is not per se sufficient to raise the issue of criminal responsibility, except

perhaps on a charge of public drunkenness. To the same effect see *Salzman v. United States*, 131 App.D.C. 939, 405 Fed.2d 358; *People v. Walcher*, 42 Ill.2d 159.

█ Apart from defendant's alleged chronic alcoholism and amnesia he further contends that he was so intoxicated at the time of the incident that he was incapable of forming the necessary intent. He cites the fact that he had been drinking gin for an afternoon and an entire night, that the forged signature was so badly written, so clumsily misspelled, and that his entire activities as described by the bank employees were so ludicrous that there can be no question of any intent to defraud. The picture thus drawn by counsel is at variance with the State's evidence, for defendant was described as appearing normal in his actions and appearance, steady on his feet and coherent in his conversation. He did not appear intoxicated though alcohol could be smelled on his breath, and the fact that he misspelled the payee's name was not so unusual as to arouse the teller's suspicion as she was accustomed to regular customers from time to time nervously misspelling their own names. Under such circumstances it is the function of the jury to weigh the testimony and determine the credibility of the witnesses and we cannot say that such evidence was so unsatisfactory as to raise a reasonable doubt as to plaintiff's guilt, but to the contrary we find the verdict justified. *People v. Friedman*, 4 Ill.2d 414; *People v. Klemann*, 383 Ill. 236.

█ Finally, defendant contends that his sentence was excessive. At his hearing in mitigation and aggravation it was determined that defendant was 41 years of age and that he had been convicted of four previous felonies ranging from robbery, to larceny, to sale of heroin. The only testimony offered by defendant was his own to the effect that he was married, had one child, was expecting another and that he had stopped drinking. As we have reiterated in a number of recent cases (*People v. Lampley*, Agenda No. 70-162, post, at 282, and *People v. Dodd*, Agenda No. 71-58, (Ill.App.2d)), the authority of a reviewing court to reduce a sentence should be applied with considerable caution and circumspection (*People v. Taylor*, 33 Ill.2d 417); and the burden of presenting mitigating circumstances in a record falls upon a defendant and it is he who must make a substantial showing in order to justify a reduction of sentence on review. (*People v. Nelson*, 41 Ill.2d 364.) Here we find a lack of mitigating circumstances justifying a reduction of defendant's sentence. The penalty imposed is within the limits of one to fourteen years as set by the legislature (Ill. Rev. Stat., ch. 38, par. 17—3), and there is ample time between the minimum and maximum terms to make the sentence truly indeterminate.

The judgment of the circuit court of Madison County is affirmed. Under these circumstances, we find no basis to change the sentence imposed by the trial court.

Judgment affirmed.

JONES, J., concurs.

Mr. JUSTICE GEORGE J. MORAN dissenting:

I would order a substantial reduction of the sentence in this case because the sentence is not proportionate to the seriousness of the offense. See my dissent in *People v. Lampley*, post, at 282.