THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JESUS GARCIA Defendant-Appellant.

(No. 55722;

First District—December 28, 1971.

*Rehearing denied March 3, 1972.*

McNAMARA, J., dissenting.

Frederick F. Cohn, of Chicago, for appellants.

William J. Scott, Attorney General, and Edward V. Hanrahan, State's Attorney, both of Chicago, (James B. Zagel, Assistant Attorney General, Robert A. Novelle and Themis N. Karzezis, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE LEIGHTON delivered the opinion of the court:

This is an appeal to review a judgment that convicted defendant of indecent liberties with a child. Trial was by jury. He was sentenced to serve four to eight years. Urging reversal or reversal and remand for a new trial, defendant advances seven substantive and procedural grounds. We review only his principal contention that the evidence did not prove him guilty beyond a reasonable doubt.

On August 31, 1968, Luz Hernandez, 17 years of age and single, lived on the third floor at 1205 North Spaulding in Chicago with her two

children, both boys. The older was 3 years old; the younger was a 15-month old baby who, for the entire month of August, was suffering from a bad case of diarrhea. Miss Hernandez had known the defendant for about 10 months. He visited the Hernandez apartment and he was trusted with the care of the baby. The night of August 30, defendant slept on a sofa in the Hernandez home. He fed the baby at about 6:00 A.M., the morning of August 31, 1968.

At about 9:30 P.M. that evening, Miss Hernandez bathed the 15-month old baby and dressed him in a shirt and diaper. She put him in his crib, locked the apartment and went outside near a tavern to talk with friends. Defendant came out of the tavern, and asked Miss Hernandez if he could use the washroom in her apartment. Miss Hernandez consented and gave defendant the key. After defendant was in the apartment ten or fifteen minutes, Miss Hernandez heard the baby scream. She ran upstairs and knocked on the apartment door. There was no answer. Some five minutes or so later, defendant opened the door. Miss Hernandez saw "[h]e had the baby in his right hand  *  *  *  he zippered his pants and then he threw the baby to the side of the wall." The baby "[h]ad bowel over him. On his head, face and behind." Miss Hernandez said that the baby had blood on "his behind" and he was dressed only in a little shirt. In her testimony, Miss Hernandez said that the following Monday she found the baby's diaper "[b]ehind the door in my bedroom  *  *  *  behind the clothes hamper  *  *  *  it was clean." She threw it away.

When she first saw him with the baby, Miss Hernandez noticed that defendant had "[b]owel movement  *  *  *  all over his pants, in front of his pants." The bedspread and sheet on Miss Hernandez' bed were stained. On the sofa was a handkerchief. Signs of the child's "bowel movement" were on the floor in the living room and bedroom. According to Miss Hernandez, there were blood spots on the bedroom floor. She said that because "Mr. Garcia was too drunk to run away," she pushed him onto a sofa. A short time later, her "boyfriend," Pedro Cruz, came into the apartment. The police were called. Defendant was arrested. The baby boy was taken to a hospital where, at about midnight, he was examined by Dr. W. John Kenfield. This examination revealed "a small  *  *  *  superficial tear" in the anus or rectum. The doctor had "[s]een tears of this nature before in children." Near the tear was a small amount of bright red bleeding. Dr. Kenfield said he did not know the cause of the superficial tear.

The baby remained a patient at the hospital. On September 1, 1968, Dr. Alberto Guevara, the baby's doctor before August 31, examined him and saw the tear described by Dr. Kenfield. It was Dr. Guevara's opinion

that an "extensive period of diarrhea" could have caused the tear in the baby's anus. On redirect examination, Dr. Guevara said that "insertion of some foreign object from the outside" could have caused the injury. Dr. Gun, who testified for the prosecution, also examined the child and saw the tear described by the other doctors. His attention was called to Dr. Guevara's testimony that the tear could have been "caused by an extended period of diarrhea." Dr. Gun answered, "It's possible."

After Dr. Gun, and as its last witness, the State called Mrs. Caporusso, a microanalyst who testified that to determine the presence or absence of blood or spermatazoa, she examined the bedspread and sheet from Miss Hernandez' bed, the handkerchief found on the sofa, defendant's trousers and his shorts. No spermatazoa was found on any of the items. The two red spots on the bedsheet were not blood. On all of the items were fecal matter that caused stains. On the fly of defendant's trousers and shorts were stains which contained blood.

Defendant then testified as the only witness for defense. He told the jury that on the evening of August 31, 1968 he obtained permission to use the washroom in Miss Hernandez' apartment. He found the window of the apartment open and while in there, the baby began to cry. He noticed the child was without a diaper. He thought the baby was cold and he picked him up to put a diaper on him. While trying to do so, the baby had a bowel movement that spread over "[m]y clothes. All over my clothes." Defendant said he then put the child on the bed to look for something with which to clean his clothes. It was then, he said, that someone knocked on the door and "Miss Lucy came in." When defendant was cross-examined, he admitted that when he went into the apartment, he locked the door. In the trial court, in his direct and cross-examination, defendant denied he did anything wrong with or to the 15-month old baby. In this court, he contends that the evidence did not prove his guilt beyond a reasonable doubt. This contention requires us to decide whether defendant's conviction has support in the evidence as required by law.

■■■ In Count I of the indictment, defendant was charged with indecent liberties with a child in that he, with the intent to arouse and satisfy his and the child's sexual desires, lewdly fondled and touched the child. In Count II, defendant was charged with deviate sexual assault in that he "[b]y the use of force and threat of force, compelled [the child] to submit to an act of deviate sexual assault by inserting his penis into the rectum of said [child] * * *." At the close of the State's case, defendant moved for a directed verdict. This motion questioned the sufficiency of the evidence to sustain a conviction under the applicable statutes. (*People v. Chiafreddo*, 381 Ill. 214, 218, 44 N.E.2d 888.) After

hearing arguments, the trial judge overruled the motion as to Count I but sustained it as to Count II. This ruling, in effect, removed the case in that count from the rules relating to jury cases and made applicable the rules of non-jury trials. (*Larson v. Harris*, 77 Ill.App.2d 430, 434, 222 N.E.2d 566.) It is well settled that a motion to find for a defendant at the close of a plaintiff's case involves only a question of law. Allowance of the motion does not adjudicate any issue of fact. (*Anderson v. Board of Education*, 390 Ill. 412, 61 N.E.2d 562; *Malman v. Village of Lincolnwood*, 61 Ill.App.2d 55, 208 N.E.2d 884.) For these reasons, the trial judge's ruling can only be construed as a legal determination that defendant, on the evidence presented, was entitled to an acquittal of the charge that he committed deviate sexual assault on the child by inserting his penis into the child's rectum.

In *People v. Haran*, 27 Ill.2d 229, 188 N.E.2d 707, defendant was charged with rape, statutory rape, and with crime against nature. A 15-year old girl was involved. He was first tried for rape and statutory rape. He was acquitted of both charges. Fourteen months later he was tried for the crime against nature which allegedly occurred at the same time. In the latter trial, the State was permitted to prove that defendant had intercourse with the girl. Defendant was convicted. In reversing his conviction, the Supreme Court held that when defendant was acquitted of statutory rape, it was determined that on the occasion alleged, he did not have intercourse with the girl. Therefore, the State could not rely on the alleged sexual intercourse to prove related crime against nature.

■■ When we apply *Haran* to this case, we notice that the *actus reus* of the alleged deviate sexual assault consisted of two elements: force and insertion. However, the peculiar facts of this case made proof of force unnecessary. The 15-month old baby was incapable, legally, physically or in any manner of consenting to or resisting an act of deviate sexual assault. Therefore, force was immaterial. The only proof required to support a conviction under Count II was evidence beyond a reasonable doubt that defendant inserted his penis into the rectum of the child. When defendant was acquitted of deviate sexual assault, it was determined that he did not insert his penis into the child's rectum. (*People v. Haran, supra.*) For this reason, the State is precluded in this appeal from claiming the defendant inserted his penis into the child's rectum, just as it could not prove this fact in another trial after the acquittal. (Compare *State v. Cormier* (1966), 46 N.J. 494, 218 A.2d 138; and see Anno. 9 A.L.R.3d 203, 233 (1966).) To allow otherwise would subject this conviction to a serious constitutional question. See *Ashe v. Swenson* (1970), 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469.

■■ It follows, then, that defendant's acquittal of deviate sexual assault

operated to exclude certain evidence from the jury's consideration of the remaining charge. For example, it excluded any evidence which could only prove that defendant inserted his penis into the child's rectum. Among the excluded evidence was the medical testimony that the tear in the child's anus could have been caused by insertion of some foreign object. This testimony was relevant only to the ultimate fact of insertion, not to the charge of indecent liberties. Therefore, the jury could not have legally included it in deliberating the indecent liberties charge.

■■ As to this charge, it was alleged that defendant "[w]ith the intent to arouse and satisfy the sexual desires of himself and [the child], lewdly fondled and touched said [child] * * *." This accusation is one easily made, hard to prove and harder to be defended by the party accused. (*People v. Hinton*, 14 Ill.2d 424, 428, 152 N.E.2d 830; *People v. Falk*, 121 Ill.App.2d 1, 257 N.E.2d 175.) Where, as here, the evidence is entirely circumstantial, it is essential to a conviction that the facts proved be consistent with defendant's guilt and inconsistent, on any reasonable hypothesis, with his innocence. *People v. Wilson*, 400 Ill. 461, 473, 81 N.E.2d 211; *People v. Benson*, 19 Ill.2d 50, 61, 166 N.E.2d 80.

■■ Lewd fondling is an expression commonly known and understood in the sense of handling tenderly. (See *Almaguer v. State* (1951), 155 Tex. Cr. 531, 533, 237 S.W.2d 631, 633.) The word "fondled" means "[a] person or thing fondled or caressed; one treated with foolish or doting affection. And 'fondle', to treat with tenderness; to caress; as, a nurse fondles a child." *Gay v. State* (1877), 2 Tex.App.127, 134.

Reminded of these principles, we come to the facts of the case relevant to the charge of indecent liberties. Defendant, at the time of the alleged offense, was a 29-year old man. The child involved was a 15-month old baby. Defendant was known in the child's family. Indeed, the mother had trusted him with the child's care. For a month before the night in question, the baby was suffering from a severe case of diarrhea. Defendant had asked and received permission to use the washroom in the Hernandez apartment. He was in the apartment ten or fifteen minutes before the baby's cry attracted the mother.

Portions of Miss Hernandez' testimony concerning what she claimed to have seen on her return to the apartment were contradicted by other witnesses and were contrary to common sense. She testified that after defendant opened the door of her apartment, he threw the baby to the floor. She said that the baby landed on its face. When she took the baby to the hospital, however, she made no request that a doctor examine the child's head or face. In addition, each of the three doctors who examined the baby at the hospital testified that he found no marks or bruises about the head, face or neck. In any event, testimony that de-

fendant threw the baby to the floor on its face is inconsistent with the charge that he "[l]ewdly fondled and touched * * *" the child. Further, Miss Hernandez testified that after defendant threw the baby to the floor, she picked it up, pushed defendant to the couch and placed the baby there with him. She then left the room, leaving defendant and her child alone on the same couch. This described conduct materially contradicts her testimony that defendant was drunk, had molested her child, and had thrown the child to the floor, face first.

On the other hand, the description of the child's condition after it had had a bowel movement while defendant was in the apartment, are consistent with the intestinal ailment concerning which the mother testified. The "superficial tear" in the baby's anus, in the opinion of two of three doctors, could have been caused by the diarrhea from which the child was suffering. Miss Hernandez testified that she saw blood on the floor of the apartment. Mrs. Caparusso, the microanalyst, said she found blood in the stains on the fly of defendant's trousers and on his shorts. First, we notice a lack of evidence that the blood found on defendant's trousers and shorts was that of the child. Second, while existence of blood in the child's anus and on defendant's trousers and shorts may be relevant to show a "touching," it is consistent with the medical testimony and with defendant's claim that when he tried to put a diaper on the baby, the child defecated on defendant's clothes.

■■■ Above all else, we are reminded that a case in which an adult is accused of sexually molesting and injuring a helpless child requires caution in construing the evidence. (Compare *People v. Freedman*, 4 Ill.2d 414, 123 N.E.2d 317.) When we review a case like the one before us, we are especially charged with the duty to carefully examine the record. (*People v. Keiner*, 81 Ill.App.2d 397, 399, 226 N.E.2d 477.) In discharging this duty, we observe that after his arrest, defendant denied the accusation against him, he made no incriminating statement and he persisted in his denials before the jury. In his testimony, handicapped by language difficulties, he explained how he went to the Hernandez apartment to use the washroom and the difficulties he encountered with the child. Although the State makes much of the five to ten minutes defendant took to open the door of the apartment when Miss Hernandez knocked and the finding of the child's diaper behind a hamper (clean with the pins missing), these facts were circumstantial evidence which the State had to prove were consistent with defendant's guilt and inconsistent with any reasonable hypothesis of his innocence. (*People v. Wilson, supra; People v. Benson, supra.*)

We see no incriminating significance in the fact that defendant emerged from a tavern (which apparently had washroom facilities)

and asked the child's mother for the key to her apartment in order to use the toilet. While disclaiming extensive knowledge of toilet accommodations furnished in such public places, we assume that a washroom in a private home (particularly in the one defendant had slept the night before) is to be preferred to that which is commonly found in a Chicago neighborhood tavern. Nor do we agree as the State insists, that when defendant finally opened the door of the apartment, the mother found him with his trousers "unzipped." Our reading of the mother's testimony leads us to conclude that when defendant opened the door, "[h]e zippered his pants    *    *    *." However it might have been, when it is recalled that defendant went to the apartment to use the washroom, no inculpating meaning can be attached to the fact that he was found in the manner described by the mother. Ordinarily, there is nothing incriminating in a man being found in an apartment familiar to him with his pants either "unzipped" or being "zippered" after going there to use the washroom. To give only a criminal connotation to this simple domestic occurrence is to rest the conviction in this case on suspicion and surmise.

■■■■ Although we respect the findings of a jury, its determination concerning weight of the evidence and the credibility it attaches to testimony of the witnesses, it is our duty, nonetheless, to reverse a judgment entered on a verdict which rests on evidence insufficient to remove all reasonable doubt of defendant's guilt and create an abiding conviction that he committed the crime charged. (*People v. Nunes,* 30 Ill.2d 143, 146, 195 N.E.2d 706.) In the opinion of the majority, the evidence in this record does not prove defendant guilty beyond a reasonable doubt. Judgment is reversed.

Judgment reversed.

SCHWARTZ, J., concurs.

Mr. JUSTICE McNAMARA, dissenting:

I disagree with the conclusion reached in the majority opinion that the court's direction of a verdict on the charge of deviate sexual assault removes from consideration much of the evidence on which the State relies to support the jury's verdict which found defendant guilty of indecent liberties with a child. The purpose of a motion for a directed verdict by a defendant in a criminal case is to present the question of law as to whether the evidence which has been presented is sufficient to sustain a conviction for the crime charged. (*People v. Chiafreddo,* 381 Ill. 214, 44 N.E.2d 888; *People v. Post,* 78 Ill.App.2d 121, 223 N.E.2d 238.) In directing a verdict as to the charge of deviate sexual assault,

the trial judge merely found that the State had failed to prove one of the elements of the crime. That direction of a verdict did not, as the majority suggests, create any constitutional issue as to the remaining charge of indecent liberties with a child. It is not necessary, however, to consider any such question in determining the issues on this appeal. In directing the verdict, the trial court obviously held that there was no testimony as to the legal element of force necessary to support the charge of deviate sexual assault.

The majority opinion, however, states that force is presumed as a matter of law when the crime of deviate sexual assault is committed against a victim of tender years. The majority directs my attention to no authority so holding that to be the law. And in my view, the assertion of such a rule is unique in construing this crime either under case law or statute. This court has applied the rule that force or threat of force is an essential element of the crime of deviate sexual assault. (*People v. Fickes,* 89 Ill.App.2d 300, 231 N.E.2d 602; *People v. Bruno,* 110 Ill.App. 2d 219, 249 N.E.2d 252.) Moreover, section 11—3(a) of the Code of Criminal Procedure provides: "Any person of the age of 14 years and upward who, by force or threat of force, compels any other person to perform or submit to any act of deviate sexual conduct commits deviate sexual assault." The Committee Comments state: "However, deviate sexual assault is restricted to force and intimidation situations, which are more serious."

The principle that force is not presumed by the law in a crime of deviate sexual assault against a victim of tender years becomes more evident upon an examination of the section of the Code of Criminal Procedure which creates the crime of indecent liberties with a child. Section 11—4 of the Code provides:

"(a) Any person of the age of 17 years and upwards who performs or submits to any of the following acts with a child under the age of 16 commits indecent liberties with a child:

(1) Any act of sexual intercourse; or

(2) Any act of deviate sexual conduct; or

(3) Any lewd fondling or touching of either the child or the person done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the person or both."

The Committee Comments to that section state: "Note, however, that the requirement is only of 'any act of deviate sexual conduct,' which includes such acts performed with the consent of the child, and is not restricted to the force situations required in Deviate Sexual Assault." The General Assembly did not require proof of force in a prosecution for indecent liberties with a child. It seems evident that the General Assem-

bly did intend to require proof of force as an element of deviate sexual assault, notwithstanding the fact that the victim was a child. The language of the statute defining the two crimes requires this conclusion. It also seems clear that the direction of a verdict in the deviate sexual assault charge in the instant case would not prevent the jury from considering all of the evidence in the indecent liberties charge, including the circumstantial evidence that defendant had inserted his penis in the child's rectum.

The majority's reliance on *People v. Haran*, 27 Ill.2d 229, 188 N.E.2d 707, is misplaced. In that case, defendant was charged with rape, statutory rape and a crime against nature arising out of the same conduct. He was tried for rape and statutory rape and found not guilty by a jury. Fourteen months later, he was tried and convicted of a crime against nature. In reversing and remanding the conviction for a new trial, the court found that the only fact necessary to support a conviction for statutory rape was that defendant had intercourse with the victim. Since, in the earlier trial, a jury had found defendant not guilty of statutory rape, that finding amounted to a determination that defendant did not have sexual intercourse with the prosecutrix. The court, therefore, held that in a subsequent trial the State was estopped from presenting evidence of the intercourse. No such estoppel attaches as to any fact in the case at bar as the result of the directed verdict. Specifically, the prosecution was not estopped from presenting evidence that defendant had inserted his penis in the child's rectum to establish the proof for the charge of indecent liberties with a child, nor was the jury estopped from a consideration of that evidence.

The remaining question is whether the evidence adduced was sufficient to support the finding of guilty on the charge of indecent liberties with a child. The majority opinion would limit the evidence in support of the charge to that which would show a fondling or caressing of the child. I do not believe that the wording of the statute limits the prosecution of the crime to violations of a tender and caressing nature. The subsection under which the defendant was charged was sufficiently broad to include the conduct described at trial; and, the Committee Comments support this interpretation:

"The language of subsection (a) (3) is probably broad enough to encompass those acts more specifically described in the two preceding subsections."

Further, the testimony and the exhibits, though circumstantial, were more than sufficient to prove each element of the crime. That evidence may be set forth briefly.

Defendant, although emerging from a tavern necessarily equipped

with washroom facilities, asked the child's mother for the key to her apartment in order to use the toilet. About 15 minutes later, the child's scream attracted the mother's attention. She hastened to the door, but defendant failed to open the locked door for about five minutes. When defendant finally opened the door, the mother found him with his trousers unzipped and holding the baby. A doctor testified that the skin at the child's rectum was torn, and also testified that the insertion of some foreign object from the outside could have caused the injury. Most inculpating, a police department chemist testified that there was fecal matter and blood not only on defendant's trousers, but also on his undershorts.

The defendant's testimony that when he exited from the washroom, he noticed that the child was without a diaper and that he was looking for a diaper when the child had a bowel movement, was contradicted by the testimony of the mother. She testified that before she left the apartment she diapered the child, put the child to bed in his own bedroom, and when she returned she found that the child did not have a diaper, and that she found the unsoiled diaper the next day behind the open door in her bedroom near a clothes hamper.

The evidence was sufficient to prove defendant guilty of indecent liberties with a child beyond a reasonable doubt. The directed verdict of not guilty as to the other charge in no way tainted the evidence presented to the jury. Accordingly, I would affirm the conviction.