Julia E. Dumpert, Plaintiff-Respondent, v. Janet C. Liechty, Curtis Reichhold, and City of Wheaton, Illinois, Defendants-Petitioners.

**Gen. No. 69–33.**

Second District.

October 14, 1969.

Corrigan, Mackay, Quetsch & O'Reilly, of Wheaton, and Selwyn Coleman, of Roselle, for appellants.

Rathje, Woodward, Dyer and Burt, of Wheaton, for appellee.

PRESIDING JUSTICE THOMAS MORAN delivered the opinion of the court.

A petition was allowed by this Court for leave to appeal from an order of the trial court granting a new trial.

The sole issue is whether the verdict returned by the jury was against the manifest weight of the evidence.

The plaintiff, a woman of 78 years, was walking north on the east side of Main Street as it crossed Front Street in Wheaton, Illinois. She was wearing black and was in the pedestrian crosswalk at the time the defendant Liechty's car struck her. Although darkness had fallen, the intersection was well illuminated by overhead lights and by the lights of business establishments in the area.

Main Street has four lanes at this point; two lanes for northbound traffic and two lanes for southbound traffic. Front Street is a one-way eastbound street, approximately 51 feet wide, and runs parallel to a railroad track located to the south. Traffic control consists of a stop sign for eastbound traffic and one for southbound traffic. On occasion, however, special police officers are present to direct the pedestrian and vehicular traffic flow. The defendant, Reichhold, was such an officer at the time of the occurrence in question.

Four occurrence witnesses testified at the trial.

The defendant Liechty, accompanied by a passenger, was driving a Volkswagen southbound on Main Street and brought her vehicle to a stop at the intersection, activated her left turn signal and awaited the officer's direction to proceed. The officer was standing in the center of the intersection, with a flashlight baton in his right hand, facing in a westerly direction. He turned his head toward her car and, with his baton parallel to the ground, motioned her to make a left turn. Liechty commenced to move, hesitated because of a northbound vehicle and then resumed negotiating her turn.

Liechty testified that, prior to commencing her turn, she kept watching for the officer to signal but that up to this time she did not look at the crosswalk; that she may have glanced at the crosswalk as she proceeded in the turn but did not see anything; that the officer kept motioning her to continue, that she did not see him

61

look to the corner (from where the plaintiff started to cross the street) prior to his waving her to proceed; that she did not observe the officer signaling any pedestrians to cross the intersection; that at no time prior to the accident did she observe the plaintiff; that at the time of the impact, the plaintiff was midway between corners; that defendant was traveling between 3 to 5 miles per hour and stopped within a matter of inches; that at the time of the occurrence and when she got out of the car, there were no other pedestrians in the crosswalk; and that after the impact the plaintiff just slumped down into a sitting position.

Defendant Reichhold testified that, prior to directing the Liechty vehicle to turn left, he was facing west; that he glanced to the left to see if there was any more northbound traffic and happened to notice the corner in question for a brief moment; that his observation did not disclose any pedestrian on the corner nor walking north in the crosswalk; that he did not see the plaintiff at any time before the occurrence; that a slight noise directly behind him drew his attention to the impact; that he never used his left hand to direct traffic and at the same time used his right hand, which held the baton, to indicate that pedestrians should stop; that he would never use the wand to direct pedestrians because it confuses motorists; that he would speak to all pedestrians by saying, "You may cross," "Yes, go ahead ma'am or go ahead, sir, you may cross"; that shortly before the occurrence a light flow of traffic was proceeding east on Front Street and the Main Street traffic was stopped; that when Front Street traffic cleared he blew his whistle, gave a signal for traffic to stop and looked around the intersection for pedestrians in order to allow them to cross; that there were no pedestrians on the corners; that after this he turned facing west, gave two blasts with his whistle and signaled with the baton for traffic to move south; that when he turned around to where

the incident occurred, he did not see any other pedestrians in any portion of the crosswalk; and that as the Volkswagen passed him, it was not traveling more than 5 miles per hour.

The passenger in the Liechty vehicle testified that the officer signaled for them to make their turn and right after that, signaled the car in back of them to go straight, and then signaled them again to make their turn; that Liechty started to make her turn and the officer directed her to go straight; that she stopped and he signaled her again and she moved a little further; that the officer signaled her again to go straight so she stopped again; that on the third signal she almost completed making her turn; that the vehicle was traveling 3 to 5 miles per hour; that when she first saw the plaintiff, she was between the center and right headlight of the car; that Liechty stopped her car and jumped out before the plaintiff was down; that she did not see any pedestrians in the crosswalk; that when she got out of the car the plaintiff was still between the center of the car and the right headlight sitting on the ground facing north; that she asked the plaintiff if she was alright and the plaintiff responded that she was alright; that she did not remember the officer giving a whistle signal; and that she did not see the officer look to the corner, from which the plaintiff started to cross the street, either before or after the officer directed their vehicle to turn.

On direct examination the plaintiff testified that when she first arrived at the corner she waited for a signal from the police officer who was in the center of the intersection, facing east; that he circled the red baton for pedestrians to cross, there being a lot of pedestrians waiting on the corner with her; that there was no traffic moving at the time and that the officer signaled a car to the north which was the car that hit her. On cross-examination, the witness testified that prior to the time she stepped off the curb, as well as while she was cross-

ing, she looked to see if traffic was coming; that she did not hear any whistle blow; that the officer just gave the "swing" of the baton one time for them to go and the other people started to cross; that she imagined there were five or six people ahead of her and possibly five behind her; that while crossing, the officer signaled the Volkswagen to turn left, although she did not see the officer signal; that the car was coming at a good rate; that it was two and one-half feet away from her when she saw it; that police officers, who arrived at the scene, took her to her apartment; that the next day she went to the hospital for x rays and on the sixth day following the accident she again went to the hospital; and that on the first day of her second hospital visit, she remained in bed, did not get up, walk around the room or move from the bed.

During cross-examination the plaintiff was confronted, on four different occasions, with contradictory statements taken at a discovery deposition. A reading of the transcript of testimony discloses that during the plaintiff's testimony at trial she also made other contradictory statements. In addition, the defendant Liechty produced a witness who called upon a patient in the same room with the plaintiff on the first day of her second hospital visit. This witness testified that after the plaintiff was lifted into bed by attendants, who then left, the plaintiff got out of bed, went to the bathroom and, afterward, began unpacking and putting her things away. Further, the witness could not remember noticing the plaintiff limp.

The above is a résumé of the liability evidence produced at trial before a jury. The verdict found in favor of all defendants and the trial court, on a post-trial motion, granted the plaintiff a new trial as to all defendants, stating ". . . it is my opinion that the verdict was contrary to the manifest weight of the evidence. . . ." No error in the trial of the case is claimed.

The amended complaint, in one count, charged the defendant Liechty with negligence and, under another count, joined the defendants Reichhold and the City of Wheaton charging wilful and wanton misconduct.

██ Wilful and wanton misconduct has been defined in many ways by various court decisions. In Schneiderman v. Interstate Transit Lines, 394 Ill 569, 69 NE2d 293 (1946) at page 583 it was stated:

> "A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care."

Later, in Mower v. Williams, 402 Ill 486, 84 NE2d 435 (1949), the Court followed a previous definition when quoting from Bartolucci v. Falleti, 382 Ill 168, 46 NE2d 980 (1943) when it said at page 490:

> " 'Ill will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of a person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness.' "

65

We believe that the most recent declaration found in Klatt v. Commonwealth Edison Co., 33 Ill2d 481, 211 NE 2d 720 (1965), wherein the Court, at page 488, readopted the definition found in the Schneiderman case and expressly refused to overrule the same, is the current and better definition for wilful and wanton misconduct.

Whether, in a particular case, the one charged has been guilty of wilful and wanton misconduct is a question of fact for the jury, Schneiderman v. Interstate Transit Lines, supra, and should only rarely be ruled upon as a matter of law. Larson v. Harris, 77 Ill App2d 430, 435, 222 NE2d 566 (1966), affd 38 Ill2d 436, 231 NE2d 421 (1967).

Negligence has been defined as "the omission to do something which a reasonable man guided by those ordinary considerations which ordinarily regulate human affairs would do, or the doing of something which a prudent and reasonable man would not do." Hack v. New York, C. & St. L. R. Co., 27 Ill App2d 206, 216, 169 NE 2d 372 (1960).

Whether, in a particular case, the one charged has been guilty of negligence is a question of fact for the jury, Kahn v. James Burton Co., 5 Ill2d 614, 623, 126 NE2d 836 (1955); any questionable or conflicting fact situation must be resolved in favor of the verdict, Hartman v. Goldblatt Bros., Inc., 19 Ill App2d 563, 565, 154 NE 2d 872 (1958); and an opposite conclusion must be clearly evident for a jury's verdict to be manifestly against the weight of the evidence, Hoffman v. Wilson, 60 Ill App 2d 396, 407, 208 NE2d 607 (1965).

The question is not whether the trial judge would have reached a different conclusion but whether there was evidence which would support the jury's conclusion. If so, then the trial court is unwarranted in interfering with the result. Roth v. Lissner Iron & Metal Co., 88 Ill App2d 352, 356, 232 NE2d 534 (1967).

Ordinarily, a new trial is granted in order to correct errors that occurred during the conduct of the trial. This is not so in the instant case, as the new trial was granted only on the ground that the verdict was against the manifest weight of the evidence. From a review of the record, the jury was faced with the credibility of witnesses and conflicting evidence as to the liability. It was their function to resolve both problems, which they did by their verdict. We, as a reviewing court, cannot say that in doing so the jury was unwarranted in its conclusion, or that such conclusion was against the manifest weight of the evidence, or that there were no reasonable grounds in the evidence upon which to base the jury's verdict, or that an opposite conclusion is clearly evident, plain or indisputable or palpably erroneous and wholly unsupported by the manifest weight of the evidence. Jenkins v. Hechtman, 83 Ill App2d 72, 76, 226 NE2d 383 (1967); Green v. Smith, 59 Ill App2d 279, 283–284, 207 NE2d 169 (1965).

Therefore, the judgment of the trial court granting a new trial is reversed and this cause is remanded with directions to enter judgment on the verdict.

Reversed and remanded with directions.

DAVIS and SEIDENFELD, JJ., concur.