**Dean E. Terrill, Plaintiff-Appellant, v. Derr L. Andrlik, Defendant-Appellee.**

**Gen. No. 53,070.**

First District, Fourth Division.

January 14, 1970.

Morgan, Halligan, Lanoff & Cook, of Chicago (John A. Cook and Samuel M. Lanoff, of counsel), for appellant.

Joseph A. Bailey and Jerome H. Torshen, of Chicago, for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Plaintiff, the owner and occupant of an automobile, brought this action for damages for personal injuries occasioned by the wilful and wanton misconduct of defendant, the driver of the automobile. At the close of plaintiff's case the court granted defendant's motion for a directed verdict. Plaintiff appeals contending that the trial court erred in directing a verdict for the defendant.

Testimony of Dean Terrill, the plaintiff, in his own behalf:

Shortly before 4:30 p. m. on September 1, 1960, he entered his 1957 Lincoln convertible along with the defendant. After he had gotten into the driver's seat he remembered that he had left something in his apartment. He asked the defendant to bring the car out in front and wait for him. When he returned, the defendant was in the driver's seat and he told the defendant, "Let's go." The defendant continued to be the driver until the time of the accident.

Defendant headed east toward Lake Shore Drive. As they approached the local lanes of Lake Shore Drive the defendant stopped the car at Chestnut for a stop sign. The defendant then turned north to the local Lake Shore Drive traffic lane and proceeded north to Delaware Place. At Delaware Place there is only one lane where a right turn into the express lanes is permitted. They were in this easternmost local lane. There are eight express lanes and at this time in the afternoon six of these lanes are devoted to northbound traffic. There was a barrier placed across the entrance to the four northbound express lanes on the east nearest the lake.

There was traffic control permitting access from the local northbound lanes to the two westernmost express lanes going north. "There was a sign on the red and go post saying that the turn to the east, to the express lanes is permitted on the green arrow only." The northbound lane does not move when the green arrow is on.

376

There is no movement north and south permitted in the four westernmost express lanes when the green arrow is on.

The condition of the traffic was "tending to be heavy" in both the local and express lanes. As the car approached the signal it stopped behind two other cars for the red light. There were at least three cars to the left (the northbound through local lane).

As the green arrow came on "the number one car that was stopped turned and took the green arrow and proceeded" to the north express lane. The number two car moved up and stopped and did not take the green arrow. Defendant had to stop the car too. The defendant honked his horn as did the people behind him, "trying to get the lady who was in the right turn lane to take the arrow." She did not move while the green arrow was on.

As the green arrow went off she then moved straight north in the local lane as did the cars to the left. All of a sudden the defendant started the car "very suddenly" to take "the curve to go into the express lanes. I immediately, rather instinctively turned to the right to see the condition of oncoming traffic from the south in the express lanes. And I saw that we were all right from there, that the traffic coming north hadn't quite caught up. And then I swung around and looked to the north and saw one car approaching very rapidly from the north. I yelled, 'Watch out for that car,' and almost momentarily after that, at that time Derr applied the brakes very suddenly and a moment later, why, this car crashed into, the southbound car crashed into the front, left front of our car."

He then related the injuries he received in the accident and the damage to his automobile.

On cross-examination he stated that the other car was going about forty or forty-five miles an hour when the

impact occurred. He was in a hurry when he came back down from his apartment and told the defendant to drive. There was nothing unusual about the defendant's driving until he approached the green arrow light. It was not until the defendant "started the car to, to make his turn into a, into the express lane of traffic when I looked around." He looked around to the south and saw traffic moving north. This occurred after the green arrow had gone off. He said something like, "I think I said something about it seems to be clear coming south. It seems to be clear from this direction or from the south, or something to that effect."

When the light changed from the green arrow to green he knew he wasn't supposed to go out on the express lanes. He did not tell the defendant to stop, "I didn't try to direct his traffic."

Testimony of Marshall Davis, called by the plaintiff:

He is an associate city engineer for the Bureau of Street Traffic, Chicago, Illinois. He brought with him the timing sequence and traffic control information pertaining to the intersection of Delaware Place and Lake Shore Drive on September 1, 1960. The lights were set to the rush hour pattern beginning at 4:00 p. m.

After a full red light in the northbound local lanes a right turn green arrow comes on for thirty-one seconds. During this thirty-one second green arrow the local curb lane is permitted to turn right, into the northbound express lanes. The through northbound local traffic remains stopped and the two northbound and two southbound express lanes are also stopped with a red light. After the thirty-one second green turn arrow is completed, there is a four-second interval where it is off. This is a transitional interval and no movement is permitted. After this four-second interval the green light begins for the northbound local traffic. The green arrow is off, no turn into the express lane is permitted

and the two northbound and two southbound express lanes have a full green light.

There was also testimony by Dr. Robert D. Keagy and Dr. Roger W. Friskey as to the plaintiff's serious and permanent injuries and their causal connection with this accident.

Opinion

■ The plaintiff sought relief under the Illinois guest statute, Ill Rev Stats 1961, c 95½, § 9–201, wherein a cause of action against an automobile driver accrues to a guest occupant only if the guest sustains injuries due to the wilful and wanton misconduct of the driver. In Dumpert v. Liechty, 114 Ill App2d 59, 251 NE2d 652, 655, the court in discussing wanton misconduct first defined these terms:

> "Wilful and wanton misconduct has been defined in many ways by various court decisions. In Schneiderman v. Interstate Tr. Lines, 394 Ill 569, at page 583, 69 NE2d 293, at page 300 (1946) it was stated:
>
>> " 'A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.' "
>
> . . . . . .
>
> "We believe that the most recent declaration found in Klatt v. Commonwealth Edison Co., 33 Ill2d 481, at page 488, 211 NE2d 720 (1965), wherein the Court, readopted the definition found in the Schneiderman case and expressly refused to overrule the

379

same, is the current and better definition for wilful and wanton misconduct."

The court then concluded that:

"Whether, in a particular case, the one charged has been guilty of wilful and wanton misconduct is a question of fact for the jury, Schneiderman v. Interstate Tr. Lines, supra, and should only rarely be ruled upon as a matter of law. Larson v. Harris, 77 Ill App2d 430, 435, 222 NE2d 566 (1966), affd 38 Ill2d 436, 231 NE2d 421 (1967)."

In McCormack v. Haan, 20 Ill2d 75, 169 NE2d 239, the plaintiff brought an action to recover for personal injuries she sustained while riding as a guest in a car driven by one of the defendants (Patrick L. McGann). In McCormack, supra, plaintiff "unequivocally testified that McGann stopped between the stop sign and the highway. She testified that she was riding in the right front seat, that she looked to the right and said 'clear right' and that McGann looked to the left and then proceeded slowly across the intersection." The court concluded that the Appellate Court erred when it determined that the trial court should have directed a verdict against the plaintiff and in favor of the defendant administrator. At page 78 the court stated that:

Even if we assume that the plaintiff's testimony conclusively establishes that McGann stopped his car at a place where he had a clear view of approaching traffic on the preferential highway, and that plaintiff looked to the right and McGann looked to the left, it does not follow that he was exonerated from responsibility for the accident. It was his duty to ascertain whether or not it was safe to enter the protected intersection, and if it was not reasonably safe to do so, he should have yielded the right of

way to the oncoming vehicle. The jury could find that his failure to do so was wilful and wanton misconduct. Hering v. Hilton, 12 Ill2d 559.

■ The plaintiff contends that the trial court erred in granting defendant's motion for a directed verdict. The correctness of the trial court's decision must be gauged by the rule in Pedrick v. Peoria & Eastern Ry. Co., 37 Ill2d 494, 229 NE2d 504, that a verdict ought to be directed "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

■ Applying the Pedrick standard to the instant case we cannot say that the evidence so overwhelmingly favors the defendant that no contrary verdict could ever stand. The jury could find that the defendant exhibited a reckless disregard for the safety of the plaintiff since the green turn arrow was off four seconds before he began to make his turn and he should have had knowledge of this fact; that defendant through his carelessness failed to discover the danger of making a turn into an express lane against the light and in traffic which tended to be heavy; and that the defendant acted recklessly by making a turn into the path of an oncoming car which he should have seen if he had been looking carefully.

■ Nor did the evidence so overwhelmingly favor the defendant so as to require a finding that plaintiff was guilty of contributory wilful and wanton conduct. The jury could find that the defendant suddenly drove forward against the light and turned directly into the path of the approaching vehicle and that plaintiff in no way contributed to the accident.

Defendant claims that only the plaintiff knew of the imminent danger and peril toward which defendant was

381

headed; that, instead of warning the defendant, plaintiff encouraged him forward by stating it was all clear from the south.

In McCormack v. Haan, 30 Ill App2d 311, 174 NE2d 206, which followed the remand of the McCormack case by the Illinois Supreme Court the plaintiff testified that as the defendant pulled past the stop sign she said "clear right"; that she did not see the car approaching from the left prior to the impact and that she never warned the driver of the impending danger. The defendant administrator contended that the evidence disclosed that the plaintiff was guilty of contributory wilful and wanton misconduct as a matter of law and therefore the trial court should have directed a verdict for him. The court in rejecting this argument stated at page 314 that:

> This argument is without merit for the reason that it overlooks the fact that McGann and not the plaintiff was driving and had control of the automobile in which plaintiff was riding as a passenger. The driver of an automobile synchronizes his speed to the time, place and duration of his own observation and not to that of his passenger. The passenger not being forewarned as to how the driver of an automobile expects to operate it in a particular situation is at a disadvantage and makes his observation under difficulties. It is confusing and disturbing to a driver of an automobile to have a passenger suggesting how he shall drive. Unless the passenger sees an obvious danger which the driver might not see, there would be no duty on the passenger to warn the driver. The plaintiff in this case had a right to assume that McGann was looking carefully and to relax her diligence accordingly on the assurance that he was watching out for her safety because she was a passenger having no control over

the operation of the automobile. Kunz v. Larson, 15 Ill App2d 126, 145 NE2d 746.

Whether or not plaintiff was guilty of contributory wilful and wanton misconduct which caused or contributed to her injury was a question for the jury.

■ In the instant case the defendant had control of the automobile and the plaintiff had the right to assume that the defendant was looking carefully. The defendant should have seen the approaching southbound car as he made his improper turn after the green arrow went off. While the plaintiff, as passenger, had no duty to warn the defendant of this obvious danger, he did in fact yell a warning, "watch out for that car" as soon as he looked to the left and saw the approaching southbound car. Thus we also find that there was sufficient evidence to submit to the jury the question of plaintiff's freedom from contributory wilful and wanton misconduct.

■■ The plaintiff was the owner of the automobile defendant was driving at the time of the accident and relied upon the Illinois guest statute (Ill Rev Stats 1961, c 95½, § 9–201) for recovery. When this accident occurred, the owner-occupant of an automobile being driven by another person was considered a "guest" within the meaning of this statute. Under the statute the only duty imposed upon a defendant driver was to refrain from wilful and wanton misconduct. In the recent case of Summers v. Summers, 40 Ill2d 338, 343, 239 NE2d 795, the court, in determining whether or not an owner-occupant was a "guest" within the meaning of the statute, held that:

> [T]his statute in its present form does not expressly apply to an owner-occupant of an automobile being driven by another; therefore, in absence of a finding of legislative intent to the contrary, our rule of construction requires the holding that an owner-

occupant is not subject to the limitations of the guest statute. . . . We hold, in accord with the majority of jurisdictions which have considered this question, that plaintiff, an owner-occupant, is not a "guest" within the meaning of the guest statute.

Since the owner-occupant is not a "guest" within the meaning of the Illinois guest statute, the duty upon the driver to refrain from wilful and wanton misconduct is no longer the standard by which an owner-occupant must plead and prove his cause of action. The action of an owner-occupant against the driver of his car may now be based upon simple negligence and the owner-occupant's freedom from contributory negligence. In the instant case we have already held that there was sufficient evidence to submit the case to the jury on the questions of defendant's wilful and wanton misconduct and plaintiff's freedom from wilful and wanton misconduct. It therefore follows that in the instant case there was sufficient evidence of defendant's negligence and plaintiff's freedom from contributory negligence to submit to the jury.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

STAMOS, P. J. and LEIGHTON, J., concur.