**Helen Rosbottom and Blanche Mitchell, Plaintiffs-Appellees, v. Clara Hensley, Defendant-Appellant.**

**Gen. No. 10,612.**

Fourth District.

July 20, 1965.

Louis F. Gillespie, George B. Gillespie, and Gillespie, Burke & Gillespie, of Springfield, for appellant.

Drach, Terrell & Deffenbaugh, and Giffin, Winning, Lindner & Newkirk, and Howarth, Howarth & Walbaum, all of Springfield (George E. Drach, James M. Drake, and John E. Howarth, of counsel) for appellees.

TRAPP, J.

Defendant appeals from judgments entered in favor of plaintiff Helen Rosbottom, in the sum of $2,500, and Blanche Mitchell, in the sum of $27,500 respective-

ly. Defendant contends that the trial court erred in denying her several motions to direct a verdict, to enter a judgment notwithstanding the verdict and to grant a new trial.

The plaintiffs filed separate actions which were consolidated for trial. The substance of the complaints is that the plaintiffs were each guest occupants of the automobile driven by the defendant, and that the latter wilfully and wantonly failed to maintain proper control of the automobile which she was operating, and failed to maintain a proper lookout in such manner as to keep the said automobile on the paved portion of the highway.

The defendant tendered, and the court submitted a special interrogatory to the jury in the following language: "Was the Defendant, Clara Hensley operating her automobile in a wilful and wanton manner at and immediately prior to the occurrence in question?" The jury answered such interrogatory "Yes."

The injuries occurred when the automobile driven by the defendant struck a tree while traveling on South Grand Avenue in Springfield, Illinois. Defendant, in argument, described South Grand Avenue as a "built-up residential street," and the defendant testified that in traveling east on South Grand Avenue, "There is one lane and a parking lane." However, a plaintiffs' exhibit of the scene shows a "No Parking" sign within a very short distance of the tree that she struck. There is also evidence that this portion of South Grand Avenue is used as a State Highway, that commercial buildings are upon the street in the area, that there were traffic lights as close as one block west of the point of collision, and that the entrance upon South Grand Avenue, through intersecting streets, was controlled by stop signs. Upon cross-examination, the defendant testified that South Grand Avenue "sometimes" is a busy street. An investigating

officer, in behalf of the plaintiffs, testified on cross-examination, that church had just let out.

The evidence of the nature of the city street and the surrounding area seems relevant to be considered in determining the degree of care required by the operator of the automobile, having in mind its traffic use and capacity.

The events on Sunday, August 16, 1961, leading up to the collision with the tree and the injuries sustained by the plaintiffs, may be summarized: The defendants and the plaintiffs agreed that they would take a trip in defendant's car, that they would take an aged neighbor of the defendant known by all as "Grandma Marriott" to St. Joseph's Home to visit friends and then the plaintiffs and the defendant would go shopping. They commenced the journey with plaintiff Blanche Mitchell being in the rear seat, the plaintiff Helen Rosbottom being in the middle of the front seat, and "Grandma Marriott" being on the right side of the front seat. In proceeding as first agreed, the car was driven south some distance then turned to travel east on South Grand Avenue some further distance. As the car approached what would prove to be the scene of the collision, "Grandma Marriott" said she wished to go to the cemetery rather than the St. Joseph's Home. It appears that this change of destination would require the re-tracing of most of the route already travelled, and farther on beyond to the north side of the city.

The defendant testified, in substance, that she had stopped the car for a traffic light at the intersection just west of the scene of the collision and was driving through the gears at a speed of 20 to 25 miles per hour and was traveling in the east bound lane of South Grand Avenue nearest the center of the street when "Grandma Marriott" advised of her wishes. Defendant testified that following such request to go to the new

203

destination she "turned her head for a split second" to glance back at Mrs. Mitchell and made a grimace to express her disgust or exasperation.

Defendant further testifies that after turning her head to the right she remembers nothing until the car hit the tree. Examined under section 60 of the Civil Practice Act, she testified that she never saw the tree prior to the collision. She also testified that the brakes and the mechanical condition of the car were good. There is no evidence that she attempted to use the brakes.

Blanche Mitchell, riding in the rear seat, testified that defendant "turned around and set her lips like she was disgusted and gave me a glance like that (indicating) for a second or two, and that is all I remember."

Helen Rosbottom testified that as she sat in the front seat, she was looking forward and did not see the defendant turn her head and that as the car swerved from its path, she, the witness, called "Clara," but that she recalled no answer.

Vern Coffin, an investigating officer, testified that he talked with the defendant at the hospital and, ". . . as near as I can recall told us she was driving on South Grand Avenue and turned around to talk to a lady in the car and the next thing she knew she had struck the tree."

Dean Ford, an investigating officer, testified, in substance, that the defendant stated that she was going east on South Grand Avenue and turned to talk to her grandmother and when she did so she lost control of her car and struck the tree.

Upon examination by her counsel, defendant testified that "at the time I looked back I didn't realize I was doing anything wrong.", that she did not realize that she was turning her head to the rear and that she did not intend to turn her head to the rear.

204

■ ■ The elements of wilful and wanton conduct which give rise to the liability to a guest occupant of a motor vehicle under the Illinois Statute (Ill Rev Stats 1961, c 95½, § 9–201), have been verbalized in the language, or minor variations of the language, found in Bartolucci v. Falleti, 382 Ill 168 at p 174, 46 NE2d 980:

> "Plaintiff's right to recover is, consequently, dependent upon proof that the accident causing the injuries was occasioned by defendant's wilful and wanton misconduct. Ill will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness. Streeter v. Humrichouse, 357 Ill 234; Jeneary v. Chicago and Interurban Traction Co., 306 id. 392."

Defendant's counsel presents the hypothesis that the defendant was not guilty of wilful and wanton conduct as a matter of law under the elements stated, for it is argued that the defendant turned her head for but a "split second" by reason of the "distraction" occasioned by the demands of "Grandma Marriott" as to the change of the destination. It is argued that defendant's own testimony shows that she had no realization that she was turning her head and that she had no intent so to do. It is contended that for

such reason we must hold that the action of the defendant was unconscious, spontaneous and inadvertent, and hence could not come within the definition of wanton conduct.

Defendant cites but one Illinois case as authority that turning one's head momentarily to glance to the rear seat does not constitute wilful and wanton negligence. In Lane v. Bobis, 340 Ill App 10, 91 NE2d 106, two congenial sportsmen, traveling to a sporting event of mutual interest, had placed their respective hunting dogs in the rear seat of the car. The dogs discovered incompatibility and mutual detestation and these feelings were expressed with such violence that they "created disturbance." Each sportsman turned to take a hand in the melee. At this time the driver lost control of the car and the companion was killed. It was contended, in behalf of the plaintiff, that the defendant was guilty of wilful and wanton negligence in placing two strange dogs together upon the rear seat. The trial court directed a verdict, which was affirmed, upon the ground that the deceased sportsman was equally guilty of wilful and wanton conduct contributing to cause the injury in placing the dogs in the rear seat. The cited opinion contains no discussion of a momentary lapse of attention, or of the unconscious acts of the defendant. The one Illinois case which has come to our attention in which the issue of alleged inadvertence by reason of distraction of the attention of the driver has been considered, is Simpson v. Marks, 349 Ill App 527, 111 NE2d 370. The plaintiff presented the theory that the defendant had taken his hand off of the wheel to embrace her. The defendant contended that his attention was distracted by flares set out at the scene of an accident. The court held that under either theory the verdict finding the defendant guilty of wilful and wanton conduct was not against the manifest weight of the evidence.

Defendant's argument is that there was no showing that the defendant had knowledge or consciousness that her conduct would be likely to result in injury, so that as a matter of law it should be held that defendant was not guilty of wilful and wanton conduct. This argument has been considered by our courts in cases we believe sufficiently similiar in fact to be considered relevant to this proposition. Such theory was argued in Gaiennie v. Fringer, 5 Ill App2d 403, 126 NE2d 38. The court points out at page 409 that the issue was whether or not the conduct was wilful and wanton as a matter of law. The defendant's conduct included the following: He stopped at a highway stop sign, started forward and drove 30 feet into the preferential highway without looking to the right or left. A guest occupant warned defendant of the approach of an automobile from the right, but the defendant neither looked, stopped his car or accelerated his vehicle to cross ahead of it. The court affirmed the judgment for the plaintiff and the denial of a motion for a directed verdict, for a judgment notwithstanding the verdict, and for a new trial. The court held that it was a question for the jury why the defendant did not look after starting across the highway, or control his car after being warned. It was the view of the court that the defendant should be conscious from his knowledge of the surrounding circumstances that the conduct would naturally and probably result in injury.

A similar argument of failure to show knowledge or consciousness of danger by the defendant was again considered in Johnson v. Chicago & N. W. Ry. Co., 9 Ill App2d 340, 132 NE2d 678. The defendant grandmother drove her car with the granddaughter as an occupant on to a railroad crossing while the railroad signals were operating and the approaching train was clearly visible, and she stopped the car. The court said that there can be no claim of error of judgment

where a person fails to discover the danger or discovers the danger and ignores it.

To the argument that the actual knowledge by the defendant was an essential element in proving wilful and wanton misconduct, the Appellate Court quoted from Stephens v. Weigel, 336 Ill App 36, 82 NE2d 697, as to the following language:

> "It is not necessary, however, that defendant intend that plaintiff should be injured by reason of his acts, nor is it necessary that the defendant actually know the dangers to which plaintiff is exposed. It is sufficient if he has notice which would alert a reasonably prudent man, and he does not take reasonable precautions under the circumstances."

The trial court was, therefore, affirmed in its refusal to direct a verdict and grant a judgment notwithstanding the verdict, and was further affirmed in denying a motion for a new trial. Similar rulings by the trial court were affirmed in Augustine v. Stotts, 40 Ill App 2d 428, 189 NE2d 757, where under the evidence it was a question of fact whether, after stopping at a highway intersection, the defendant looked and failed to see the oncoming car, or he saw it and attempted to cross the intersection ahead of it.

In 1931 prior to the adoption of the Automobile Guest Statute, our Appellate Court in Runyan v. Bland, 264 Ill App 265, considered the Indiana statute which provided for recovery by the guest where the defendant drove the automobile with reckless disregard of the rights of others. The complaint contained allegations setting forth such ground for recovery. The defendant testified, among other things, that as he drove he held his watch under the dashlight and glanced off the road for about one-half of a second to look at his watch when he was warned of the curve

and looked up. Whether or not the defendant's withdrawal of attention from the road constituted wanton conduct was held to be a question of fact for submission to the jury. The court affirmed judgment for the plaintiff guest.

We have been unable to discover any authority in this State to sustain the argument of the defendant that as a matter of law the defendant was innocent of wilful and wanton conduct in the operation of her motor vehicle.

Defendant has asked this court to consider certain cases from other jurisdictions which he deems to support his argument that there can be no wilful and wanton conduct when the act of the defendant is "unconscious." We have examined the Colorado citations and have concluded that the interpretation of that court of its automobile case statute is contrary to the policy of the court of this State under our statute. In Coffman v. Godsoe, found in 142 Colo 575, 351 P2d 808, and decided by the Colorado Supreme Court in 1960, we find that plaintiff's injuries were sustained when defendant turned his eyes from the road to watch some tennis players in a park, and, while making such observation, struck a tree. The opinion discloses that prior to this event defendant had narrowly escaped striking two cars and had driven with his hand off of the steering wheel despite the warning of his young lady guest. While sustaining a directed verdict upon the wilful and wanton counts, the court actually found that the guest relationship did not come into being by reason of the fraudulent representation of the defendant as to his being a licensed driver, and it appears that under this opinion he would be liable for ordinary negligence.

Defendant also cited Bashor v. Bashor, decided in 1938 and found in 103 Colo 232, 85 P2d 732. There the defendant took his eyes from the road to adjust the

209

radio but when his friends raised the alarm that they were overtaking a car, he did attempt to go around it, but was unsuccessful, and lost control of the car. The Colorado Supreme Court held that it was error to refuse to set aside the verdict for the plaintiff. It appears that the Colorado court has also held that there was no wilful and wanton conduct where the defendant put his arms around the plaintiff, drove through a stop light and struck another car, and they have also held that it is not wilful and wanton conduct to drive so close to the edge of a mountain road that the car falls off. We cannot, therefore, believe that the Colorado authorities are persuasive in interpreting the Illinois Statute and case law.

Defendant has cited Porter v. Hofman, decided by the California Supreme Court in 1938 and found in 12 Cal2d 445, 85 P2d 447. Its more recent case of Reuther v. Viall, decided in 1965 and found in 42 Cal Rptr 456, 398 P2d 792, gives us reason to believe that the California court has changed its view and now recognizes that wilful and wanton misconduct becomes an issue of fact to be considered by the jury. In the latter case defendant reached for a cigarette lighter which had fallen to the floor and her car swerved from its traffic lane and struck another car. The court held that it was proper to deny a motion for judgment notwithstanding the verdict, but not an abuse of the discretion of the trial court to grant a new trial upon the theory of sudden emergency, it appearing that the defendant might fear a fire in the car, or injury to the children in the car.

We have also reviewed certain Massachusetts cases urged as persuasive by the defendant.

In Crowley v. Fisher, decided in 1933 and found in 284 Mass 205, 187 NE 608, the defendant, driving at 30 to 35 miles per hour on a gravel road, crouched down to look through the window at an airplane over-

head for a period of 7 or 8 seconds. The defendant lost control of the car and struck a tree. The court affirmed a verdict for the plaintiff holding that the jury could have found that the collision resulted from loss of control through inattention and that such conduct should be deemed negligence.

Again, in Curley v. Mahan, 288 Mass 369, 193 NE 34, decided in 1934, the court directed a verdict for the defendant motorcyclist upon the issue of wanton conduct when the defendant turned his head to speak to a guest. The verdict was affirmed upon the ground that nothing in the evidence showed that the turning of defendant's head interfered with his view in operating the motorcycle. Finally, In Folan v. Price, 293 Mass 76, 199 NE 320, decided in 1936, the evidence disclosed that the defendant heard a grating noise in the right rear wheel and turned to look over his shoulder. The court found, however, that the testimony of the plaintiffs disclosed that the injury was caused by a sudden skidding of the car upon ice and that the car was held on a true course by the defendant while he turned his head, so that the proximate cause was the skidding of the car rather than the withdrawal of the attention of the driver. It seems therefore, that these authorities are actually in accord with the Illinois authorities upon the matter of the attention of the driver being diverted from the highway.

█ The Illinois courts have held that if there is any evidence in the record tending to show such a gross want of care as indicates a wilful disregard of consequences, it is a question of fact for the jury. Walldren Express & Van Company v. Krug, 291 Ill 472, at 476, 126 NE 97. While this opinion did not relate to the situation of a guest under the statute, that language has been employed in guest cases. Johnson v. Chicago & N. W. Ry. Co., 9 Ill App2d 340 at 355, 132 NE2d 678.

211

■ Whether an act is wilful or wanton is greatly dependent upon the particular circumstances in the case and normally it is the peculiar province of the jury to weigh and try the evidence. Todd v. Borowski, 25 Ill App2d 367, at 375, 166 NE2d 296.

As stated in Lessen v. Allison, 25 Ill App2d 395, 166 NE2d 806, the opinions of the Supreme and Appellate Courts in this State indicated that it is an exceptional case where the question of wilful and wanton misconduct, or contributory wilful and wanton conduct of the guest, is not a question for the jury.

Whatever the period of time that the defendant turned her head, an unmeasurable split second or a period as long as two seconds, as the trial judge said in his memoranda filed in this case, the defendant did take "her eyes off the highway for a long enough period of time to travel from the inner lane to the boulevard and collided with a tree. . . . " The evidence supports the conclusion that the defendant never saw the tree, never attempted to control the car after it began to swerve and that she did not even know that the car did, in fact, swerve from its course.

The testimony of the defendant that her conduct in turning her head was spontaneous, instinctive and was not "conscious" must be measured in the light of her own testimony that prior to turning her head to the rear she, the defendant, spoke to "Grandma Marriott" testifying, "I told her she hadn't told me that," and that after she spoke to the latter, she, the defendant, "glanced to my right."

There is also the testimony of the investigating officers as to the defendant's statements very shortly after the event, wherein defendant stated that she had turned around to talk to a lady in the car and that when she did so she lost control of the car and struck the tree.

■ In making a determination whether the situation is so clear that this court should substitute its judgment for that of the jury and the trial court, this court must consider the whole record and must also consider what facts of common experience a jury may take into consideration in making its determination.

■ Apart from the testimony of the parties, plaintiff Mitchell's Exhibit 1, a photograph shows that a tree appearing to be at least a foot in diameter was impressed into the right front of the automobile for a distance approximating its diameter and that a somewhat sturdy bumper was bent back at an extremely sharp angle at the point of apparent impact. Plaintiff Rosbottom's Exhibit 1 shows the street to be a wide street which is level with an open view. There is nothing in the situation such as a deep gutter, a poor road shoulder, a bridge abutment, a narrow road, a curve, an obstruction to view, a bad road surface, bad weather, oncoming traffic or other hazard which would make a "split second" lapse immediately dangerous. Under these circumstances the jury were entitled to infer that there was a very serious lapse of attention or a complete loss of steering control, humanly produced, to effect the result here obtained. The jury were not required to ignore the physical facts which, in the ordinary course, in the absence of explanation, would indicate gross carelessness. Suppose the same facts with no passengers and no testimony other than the photographs. Would an inference of gross carelessness be unreasonable?

■ The explanation here is a voluntary reaction to anger or disgust. The jury were entitled to infer from the testimony that the defendant was disgusted or angry and that the defendant placed the importance of communicating this feeling above the importance of safe driving and that she did this for more than a

"split second." There was no slap on the back, blowout, crash of thunder, loud horn or other disturbance, in or out of the car, which might cause the defendant to turn involuntarily. The jury viewing these circumstances was entitled to characterize the conduct first without reference to the specific result which followed. The jury could realize that in this situation the defendant could just as well have turned the car right across oncoming traffic and therefore was not unreasonable in characterizing the conduct as grossly careless. If a man were to choose to argue with his wife above watching the road, could he defend against a third party passenger upon the ground that his wife distracted him emotionally? The reaction to the distraction here set forth cannot be characterized as so involuntary as to make the issue of wilful and wanton conduct a matter of law.

As a part of her original argument, defendant discusses certain testimony which, in her Reply Brief, is categorized as a judicial admission. Upon cross-examination, the plaintiff, Mitchell, testified that the defendant had called upon her while in the hospital, at which time or times, the plaintiff had said, among other things, that the occurrence was an "accident which could have happened to anyone." Defendant's Brief quotes a dictionary defining the word "accident" as "An event that takes place without one's foresight or expectation; an undesigned sudden unexpected event.", and argues that such a definition demonstrates a conflict and incompatibility with wanton conduct. Whatever the purist concept of the precise meaning of the word "accident" as denoting the absence of fault or responsibility for the event, a cursory reading of the published reports of the highest courts discloses the common usage of the word in automobile injury cases to refer to the events from which injury results. McCormack v. Haan, 20 Ill2d 75, 169 NE2d 239. This

is so in the cases where liability is found to exist. We cannot hold that Helen Mitchell is held to a higher degree of precision in her language than the justices and judges of our courts. Again, we, as well as the jury, may consider the nature of the hospital visits as being social occasions for the mutual exchange of sympathy and regret, rather than serving as a forum for the determination of the rights of the parties. As plaintiff's counsel points out, the argument that the plaintiff's statement that the collision was an accident that could have happened to anyone exculpated the defendant from the fault is belied in the defendant's Brief and post-trial Motion which substantially admits that the defendant was liable for negligent driving, but contends that defendant's conduct was not wanton.

 Judicial admissions must be distinguished from evidential admissions in that the former are binding and are considered to be incontrovertible. They include pleadings in the case, admissions in open court, stipulations, and admissions made pursuant to requests to admit. Cleary Handbook of Illinois Evidence, 1963, secs 5.1 and 17.12. In the dictionary denotation, a judicial admission is a formal act of the party or his attorney in court, dispensing with proof of a fact claimed to be true and is used as a substitute for legal evidence at the trial. Blacks Law Dictionary, 1944.

 Certain Appellate Court decisions have referred to testimonial admissions of a party as a judicial admission. Huber v. Black & White Cab Co., 18 Ill App2d 186, 151 NE2d 641, or as informal judicial admissions. McCormack v. Haan, 23 Ill App2d 87, 161 NE2d 599. The Supreme Court, in reviewing the latter opinion (20 Ill2d 75, 169 NE2d 239) simply states that a party may conclusively bar his claim or his defense by his own testimony. If we distinguish judicial admissions which are considered to be binding and

215

incontrovertible from testimonial admissions which under certain conditions may bar a party's claim, we may assist to clarify discussion of the problem. Testimonial admissions must be evaluated and weighed in the light of all of the testimony and evidence in the case and upon a consideration of the party's opportunity to observe the facts. McCormack v. Haan, 20 Ill2d 75 at p 78, 169 NE2d 239. Other necessary elements of a testimonial admission having the effect of barring plaintiff's claim are stated in McCormack v. Haan, 23 Ill App2d 87 at p 95, 161 NE2d 599, to include deliberate testimony as to a concrete fact within the personal knowledge of the party as distinguished from a matter of opinion, estimate, appearance, inference or uncertain memory.

We note that the plaintiff Mitchell did not, in fact, testify that the collision was an "accident," but only admitted that she had so referred to it while talking to the defendant under the circumstance of the latter's call at the hospital. We do not believe that such testimony is sufficient to bar the plaintiff's claim in this case.

Again, defendant argues that the plaintiff Mitchell testified during the trial that she had observed nothing unusual about the driving of the defendant "before the accident occurred," and it is contended that such testimony is sufficient to bar recovery for wanton misconduct. This argument seems to presuppose that there must be some wanton misconduct which precedes that which causes the injury for which claim is made. No authority is cited and we have found none ourselves. The facts in evidence in McCormack v. Haan cause us to conclude that defendant's argument is without foundation in law for in that case defendant stopped at an intersection and looked. The Supreme Court held that it was for a jury to determine from the facts whether the defendant

proceeded to enter the intersection when it was not safe to do so.

The admissions here discussed were in evidence for the consideration of the jury as a part of all of the evidence in arriving at their verdict. We do not believe that they can be deemed to bar plaintiff's recovery as a matter of law.

This court has had the benefit of a memorandum prepared in detail by the trial court and filed as a part of the record pursuant to the Supreme Court rule. The trial court heard the evidence and observed the witnesses and he has stated his conclusion that the verdict of the jury and its answer to the special interrogatory were consistent and that there is sufficient evidence to sustain the finding of the jury as to each plaintiff.

As to defendant's contentions that the trial court should have granted motions for a directed verdict and for judgment notwithstanding the verdict, we must hold that there was sufficient evidence for the case to be given to the jury. As to the defendant's motion for a new trial, we have considered the evidence under the authorities cited and we are unable to say that the verdict is contrary to the manifest weight of the evidence.

The rulings of the trial court upon the several matters are affirmed.

Affirmed.

SMITH, P. J. and CRAVEN, J., concur.