John S. Turner, Plaintiff-Appellee, v. John P. Ovall, Jr., Admr. of the Estate of James Edward Woodard, Deceased, Defendant-Appellant.

(No. 11257; ▮▮▮▮▮▮▮▮▮)

Fourth District—December 7, 1970.

*Rehearing denied January 5, 1971.*

Sebat, Swanson & Banks, of Danville, (Ralph J. Swanson, of counsel,) for appellant.

Acton, Baldwin, Bookwalter & Meyer and Stifler, Stifler & Snyder, both of Danville, (John M. Bookwalter, Thomas C. Stifler, and Thomas C. Stifler, III, of counsel,) for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

Plaintiff recovered a judgment for $32,500.00 for injuries sustained while riding in the automobile of James Woodard. Post-trial motion contended that a directed verdict should have been granted at the close of all of the evidence or in the alternative a judgment notwithstanding the verdict should have been granted or in the alternative that a new trial should be granted. The post-trial motion was denied. In their briefs, both parties zero in on the question as to whether there was sufficient evidence to warrant submitting the issue of willful and wanton negligence to the jury. The trial court thought there was and we concur.

Defendant owner of the automobile and another passenger were killed, plaintiff was the only survivor, and there was no eyewitness testimony to

the occurrence events. The car was traveling in an easterly direction as the parties returned from their place of employment at Chanute Air Force Base to their homes in Danville, Illinois. The pavement was dry, it was daylight, the occupant of a car going in a westerly direction saw the car flipping over and that it was airborne for some 30 to 35 feet. All occupants of the car were outside of it when it came to a rest in a ravine in the median between the two two-lane roadways. A State trooper, who investigated the accident, stated that he observed a single tire mark, 5 to 7 inches wide, on the right-hand shoulder of the eastbound lanes of traffic. There were no marks on the highway at this point, and it curved on the right-hand shoulder for a distance of 150 feet from the point where it left the concrete highway to the point where it reentered the highway and that this observable mark was 8 feet from the concrete highway at its furthermost point. Where the mark reentered the highway, there were three scrub marks crossing diagonally in a northeasterly direction across the eastbound lanes of traffic for a further distance of about 75 feet to the median strip. These marks were not solid or continuous. There were then skid marks from the edge of the highway to the guard rails and an examination of the guard rails indicated it had been struck near the middle and the left end was loose from the ground. The trooper had no opinion as to the speed of the car.

A reconstruction expert was called and in response to a question as to the speed of the car when it originally left the pavement testified that it had to be going at least 59 mph. He likewise testified that when he stated this opinion, he did not take into consideration the fact that the car hit the guard rail, was airborne for 30 to 35 feet, and landed in the ravine. He further testified that the car was out of control from the time it was on the right shoulder and also that there was no evidence of any braking involved. On this testimony, the jury returned its verdict and the trial court refused to vacate it. The issue before us is whether or not this evidence was sufficient to warrant submitting the case to the jury and is sufficient to support the verdict of that jury. We think it was.

We do not deal here with a factual situation where there is affirmative testimony on the actual conduct of the driver of the car. In *Rosbottom v. Hensley*, 61 Ill.App.2d 198, 209 N.E.2d 655, the defendant driver turned her head to look into the rear seat of the car, lost control of it and ran into a tree, and in *Augustine v. Stotts*, 40 Ill.App.2d 428, 189 N.E.2d 757, the defendant driver made a left turn into the path of an oncoming car. There is no affirmative evidence of the conduct of the driver in the case at bar. There is only evidence of the gyrations that his automobile took. The defendant relies heavily on our *Vance v. Picken*, 93 Ill.App.2d 294, 235 N.E.2d 266. At first blush, it would appear that it is "on all fours"

with the case at bar. It is truly questionable whether any case is on all fours with another. Like girls in the chorus line, the fundamentals may be basically the same, but the contours vary considerably with each individual case. In *Vance,* there was evidence of tire marks on the shoulder, no evidence that the brakes were applied, and no opinion as to the speed at which the automobile was traveling. In short, there was no evidence from which it might reasonably be inferred that willful and wanton misconduct of the driver was the proximate cause of the injury. We there pointed out that it is the plaintiff's obligation to introduce testimony which more strongly supports his theory of recovery than it supports reasonable inferences to the contrary. In the case at bar, we have evidence that this car left the pavement, that it traveled 150 feet off the pavement, that the tire marks on the pavement were not consistently visible and that after traveling 225 to 250 feet, the car hit a railing and then became airborne for 30 to 35 feet. This in itself raises some eyebrows as to whether or not the automobile was being driven at an excessive rate of speed and/or that the automobile was out of control. Indeed the expert testified that the automobile was out of control from the time it left the pavement originally. The testimony affirmatively shows also that there were no highway conditions causing this accident on the part of the defendant's automobile, there was no oncoming traffic behaving either rationally or irrationally, there were no stray animals on the highway and there is nothing to indicate any unexpected mechanical failure. In Vance, we dealt with whether or not a trial court was justified in directing a verdict. In the case at bar, our determination is whether or not there is evidence justifying the court's refusal to take the case from the jury, refusing to grant judgment *n.o.v.,* and refusing to grant a new trial.

■■ On this issue, we come face to face with the Supreme Court's decision in *Larson v. Harris,* 38 Ill.2d 436, 231 N.E.2d 421. In that case, the trial court directed a verdict under facts somewhat similar to those we find facing us here. The Appellate Court reversed and remanded the case to the trial court for a new trial and the Supreme Court granted leave to appeal. One of the reasons for granting that leave was that the Appellate Court in its opinion, 77 Ill.App.2d 430, 222 N.E.2d 566, held that a post-trial motion in the trial court is not an essential requirement prior to appeal following a directed verdict and on that issue affirmed. In addition, the Supreme Court then reviewed the question of when a verdict may be directed or a judgment *n.o.v.* is proper and referred to *Pedrick v. Peoria & Eastern R.R. Co.,* 37 Ill.2d 494, 229 N.E.2d 504. Reiterated is the now accepted principle that directed verdicts and judgments *n.o.v.* are entered only in those cases in which all of the evidence, when viewed in its aspects most favorable to the opponent so overwhelm-

ingly favors the movant that no contrary verdict based on that evidence could ever stand. In applying that standard in *Larson,* the Supreme Court held that the Appellate Court properly ruled that there was sufficient evidence to submit the case to the jury. There, as here, there was no affirmative evidence of the conduct of the defendant. There, as here, there were no eyewitnesses. There, as here, the gyrations of the automobile occurred, but were considerably less violent than in the case at bar. In *Larson,* there was no explanation as to why the defendant was on the wrong side of the road. Here, there is no explanation as to why the defendant's automobile emulated the antics "of the man on the flying trapeze". In *Larson,* the Supreme Court stated that "considering the evidence presented and the inferences that might be drawn from the circumstances, we cannot say, applying the rule of *Pedrick,* that such evidence 'so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand'". (*Larson v. Harris,* 38 Ill.2d 436, 440, 231 N.E.2d 421, 424.) The evidence here presented and the inferences of willful and wanton misconduct which may properly be drawn from the circumstances on the issue of willful and wanton misconduct have evidentiary support within the rule of *Larson.* The trial court correctly let that issue go to the jury and properly denied a directed verdict and a motion for judgment notwithstanding the verdict. Insofar as *Vance* may be cited or construed as stating a rule at variance with *Larson,* we necessarily recede from it and follow the rule announced in *Larson.*

In view of what we have said on the question of willful and wanton misconduct, in issue of whether or not the plaintiff was a guest is moot. Likewise in view of the issues stated in this case and the evidence the jury was properly instructed as to the statute on speed and properly instructed as to circumstantial evidence. Accordingly, there is no basis for a new trial and the judgment of the trial court should be and it is hereby affirmed.

Judgment affirmed.

CRAVEN, P. J., and TRAPP, J., concur.