HOLLY BETH MILTON, Plaintiff-Appellee, *v.* HAROLD F. BRITTON, Adm'r of the Estate of Joy Ann Pfeiffer, Deceased, Defendant-Appellant.

(No. 56689;

First District (3rd Division)—May 2, 1974.

Dalton P. Grief and Ellis B. Rosenzweig, both of Chicago, for appellant.

Peterson, Ross, Rall, Barber & Seidel, of Chicago (Robert G. Schloerb, Terence J. Tykinski, Theodore A. Boundas, and John W. McCullough, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff brought action in the circuit court of Cook County against Harold F. Britton, administrator of the estate of Joy Ann Pfeiffer, deceased, for injuries sustained while riding as a guest in an automobile owned and being operated by defendant's decedent near Columbia City, Indiana. Plaintiff and decedent were the sole occupants in the automobile involved in the one-vehicle accident which resulted in the death of the decedent and the injuries to plaintiff. Trial was had before a jury which returned a verdict in favor of plaintiff in the sum of $45,000, and judgment was entered thereon. Defendant appeals.

Defendant contends that the trial court erred in (1) not entering the judgment notwithstanding the verdict in favor of defendant; (2) excluding the testimony of defendant's accident reconstruction expert; and (3) instructing the jury as to the definition of wilful and wanton negligence according to Illinois law instead of Indiana law. The facts are hereinafter set forth..

The accident, involving only the car in which plaintiff and decedent were riding, occurred on June 24, 1965, at approximately 10 A.M., on U.S. Highway 30, in the State of Indiana, at a point approximately 3 miles west of Columbia City. The highway is a four-lane divided road. The two eastbound lanes measure 22 feet in width and curve slightly to the right; the depressed and sodded median strip measures 30 feet in width; and the two westbound lanes measure 24 feet in width. The posted speed limit is 65 miles per hour. The highway pavement is black-topped. Along the northern edge of the westbound lanes is a steep embankment which extends down from the highway to an open farm field.

Telephone poles were located parallel to the highway, 75 feet north of the westbound lanes. The day was hot and sunny with good visibility, and the road condition was dry.

Larry Yeiter, of the Indiana State Police, testified for the plaintiff that he was the officer who arrived at the scene to investigate the accident. He stated that he inspected the decedent's automobile and found that the brakes were working and the brake pedal felt normal, but the frame and body were severely bent in several places. All four tires were still inflated and each had about one-third of the tread remaining. He testified that he made measurements and determined the path of the vehicle. There were tire marks in the eastbound lanes for 136 feet. The car then traveled at a 45-degree angle across the median strip for 128 feet and crossed the westbound lanes at the same angle for a distance of 46 feet. The vehicle came to rest in an open field at a point 131 feet beyond the westbound lanes. The officer further testified that his measurements indicated that the car had traveled 42 feet in the air as it left the westbound lanes, then came in contact with the ground prior to reaching the telephone poles and came to rest 10 to 15 feet north of the telephone wires. Defendant's objection to the opinion of the witness as to the speed of the vehicle was sustained.

Bessie Bacon testified that she was driving west on Highway 30, accompanied by her two sisters, and observed the accident. She stated that she first saw the decedent's automobile traveling in the right or outer lane of the two eastbound lanes. Another car was traveling in the same lane some distance in front of the decedent's car, but moving at a slower speed. She testified that the decedent's vehicle began to go around the lead car but instead, it left the highway and went across the median strip, bouncing as it traversed this area, then came up to and across both westbound lanes. After crossing the lanes it flew into the air and passed over the telephone wires north of the highway. As the car went up in the air it was turning over and the doors came off; some suitcases fell out and the plaintiff was thrown from the car while it was up in the air. The witness estimated the speed of decedent's automobile to be 70 miles an hour as it started around the other car in the outer eastbound lane. She stated that the car landed about 50 feet beyond the telephone wires in an open field, but she did not go close to the car after the accident.

Helen Schroeder testified that she was riding in the right front seat of her sister's car and she first noticed the decedent's vehicle bouncing across the median strip. It then came across the westbound lane about 100 feet in front of her sister's car when it bounced into the air and began turning over. Both doors came off and both occupants and some

suitcases were thrown out. She stated that the car went over the telephone wires and landed 50 or 60 feet from the pavement, and that she never went closer to the car than the edge of the highway pavement. She estimated that as the car crossed the median strip its speed was 75 miles an hour.

Ethel Bach testified that she was riding in the back seat of her sister's car and first observed decedent's vehicle in the right hand eastbound lanes, going east. The car turned to the north and struck the left edge of the eastbound pavement, then proceeded into the median strip, bounced across to the westbound lanes, then crossed the westbound lanes, bounced into the air, flew over the telephone wires north of the highway and landed in a field. She stated that when the car flew into the air it rolled over three or four times, the doors opened and the plaintiff was thrown out of the right front door. She estimated the speed of the car to be 70 miles an hour.

Plaintiff testified that she does not drive and has never possessed a driver's license. Defendant invoked the provisions of the Dead Man's Act (Ill. Rev. Stat. 1963, ch. 51, par. 2) to prevent plaintiff from testifying as to any matters occurring prior to or during the course of the accident.

Richard Meredith testified for the defendant that he was with his wife and children, eating breakfast at a roadside picnic area 100 feet south of the eastbound lanes of Highway 30. He stated that upon hearing a screeching sound he looked up and saw decedent's car traveling across the median strip in a northeasterly direction. He estimated the speed to be 50 to 65 miles per hour. He did not see any other eastbound vehicle. The decedent's car went across the median strip, turned over and rolled down the embankment on the north side of the westbound lanes. It did not fly over the telephone wires to the north of the highway but went under the wires, although he did see both occupants thrown out of the car and into the air.

Ruth Meredith, wife of the previous witness, testified for the defendant that she looked up at the sound of screeching tires and saw the decedent's car going sideways down the eastbound lanes at about 60 or 65 miles an hour, facing a northeast direction. She watched it cross the median strip to the westbound lanes where it flipped over and rolled down the embankment on the north edge of the westbound lanes. She said that at no time was the car as high as the telephone wires and that it did not go over the wires.

Following the conference on instructions, plaintiff moved to introduce the testimony of her mother, Janet Milton, as to the careful habits of the plaintiff. The motion was denied by the trial court.

■■ We proceed to a consideration of defendant's contentions on appeal. His first contention that the trial court erred in denying his motion for a judgment notwithstanding the verdict is predicated on the dual assertion that there was insufficient evidence presented as to the decedent's alleged willful and wanton negligence and as to the plaintiff's freedom from contributory willful and wanton negligence. In order to prevail on either of these two assertions that a judgment notwithstanding the verdict should have been entered in his favor, the defendant must successfully meet the standard set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494, 229 N.E.2d 504. The standard to be applied is that directed verdicts and judgments notwithstanding the verdicts should be entered only in those cases in which all the evidence, when viewed in its aspects most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.

Defendant's assertion that the evidence was insufficient to create a jury question as to whether decedent was guilty of willful and wanton negligence is similar to the contention raised by defendant in *Larson v. Harris* (1967), 38 Ill.2d 436, 231 N.E.2d 421. There, a guest passenger sued the defendant driver, alleging willful and wanton negligence in a one-vehicle accident wherein the plaintiff guest sustained injuries. There were no eyewitnesses, and neither the plaintiff nor the defendant could recall the occurrence due to post-trauma amnesia. The defendant did testify that prior to the accident he was in good physical condition; that his auto was in proper working order, and that the two-lane divided pavement was smooth and dry, the weather clear, and night-time visibility good. An investigating police officer testified that the defendant's car had gone off the road, down an embankment and struck a culvert. The automobile was found 249 feet from the pavement. No evidence of speed was introduced and no evidence was presented as to the cause of its crossing the center lane and down the embankment on the opposite side of the road. In applying the *Pedrick* standard the supreme court held that there was sufficient evidence to submit the case to the jury on the question of defendant's willful and wanton misconduct, and sustained the appellate court's reversal of a directed verdict for the defendant.

Two subsequent appellate court cases have been decided in reliance on *Larson.* In *Enloe v. Kirkwood* (1970), 120 Ill.App.2d 117, 256 N.E.2d 459, a guest passenger brought suit against the defendant driver for injuries sustained in a one-car accident in an occurrence strikingly similar to that in *Larson.* A witness testified that although the defendant's car had been traveling in the right or outer lane of a four-lane divided high-

way at a speed substantially over the posted limit, immediately prior to leaving the pavement the defendant's vehicle entered the inner lane in a movement described as if it were moving to the left to pass another vehicle. Defendant's car went off the pavement from the left or inner lane for a distance of 144 feet to a point 65 feet from the edge of the pavement. After citing *Larson*, the court held that in applying *Pedrick*, the trial court correctly denied defendant's motion for a judgment notwithstanding the verdict, based upon the issue of defendant's willful and wanton negligence.

Again, in *Turner v. Ovall* (1970), 132 Ill.App.2d 273, 264 N.E.2d 839, a guest passenger sued the estate of the decedent driver for injuries received in a one-vehicle accident. There were no eyewitnesses to the occurrence and no affirmative evidence was presented as to the decedent. A driver of an oncoming auto did testify that he observed the decedent's vehicle flip over and become airborne for 30 to 35 feet, eventually landing in a median strip ravine after all the occupants had been thrown out. Evidence was presented that the car left the pavement of the four-lane divided highway and entered the right shoulder for a distance of 150 feet, and that it then returned to the pavement and proceeded 75 feet diagonally across the highway where it struck the left lane guardrail and flew into the air. In sustaining the trial court in its denial of defendant's motion for a judgment notwithstanding the verdict, the appellate court stated that the evidence presented on the issue of willful and wanton negligence, together with the proper inferences drawn from the circumstances, find evidentiary support within the rule of the *Larson* case.

The defendant has cited *Vance v. Picken* (1968), 93 Ill.App.2d 294, 235 N.E.2d 266, in support of his argument that there is a failure of proof as to the willful and wanton negligence of his decedent. We find this case not to be persuasive in that the same court later receded from its earlier decision and followed the Supreme Court holding in *Larson*. *Turner v. Ovall, supra.*

■■ In the instant case, unlike either *Larson* or *Turner*, five eyewitnesses testified at trial as to decedent's speed, three of whom estimated it to be in excess of the posted limit. Two of the eyewitnesses testified that prior to the decedent's vehicle entering the median strip it made a movement toward the left or inner lane, a factor of considerable import in *Enloe v. Kirkwood, supra*. Testimony was also presented that the tires and brakes of decedent's car were in proper operating condition at the time of the accident, and that there were no erratic movements of other vehicles or obstructions on the highway which could have influenced the decedent's actions. On the basis of the evidence presented and the inferences which

could reasonably be drawn by the jury, we cannot say that the evidence so overwhelmingly favors the defendant on this issue that no verdict other than one finding the decedent not guilty of willful and wanton negligence could ever stand.

■■ The defendant's assertion that there was insufficient evidence of the plaintiff's freedom from contributory willful and wanton negligence to create a jury question concerning that issue is likewise not persuasive. In a suit alleging defendant's willful and wanton negligence, the plaintiff's freedom from contributory willful and wanton misconduct is an essential element which must be pleaded and proved. (*Zank v. C.R.I. & P.R.R. Co.* (1959), 17 Ill.2d 473, 161 N.E.2d 848; *Valentine v. England* (1955), 6 Ill.App.2d 275, 127 N.E.2d 473.) Defendant argues that no affirmative evidence was presented at trial as to plaintiff's conduct at the time of the occurrence and that no evidence is of record as to the careful habits of the plaintiff when riding as a passenger in a vehicle being operated by another. However, it was held in *Anderson v. Launer* (1957), 13 Ill.App.2d 530, 142 N.E.2d 838, that the presumption in favor of the human instinct of self-preservation and the avoidance of danger was sufficient in and of itself to take the issue of a plaintiff's freedom from contributory willful and wanton misconduct to the jury. We accordingly so hold. The trial court was correct in denying the defendant's motion for a judgment notwithstanding the verdict upon the issue of plaintiff's freedom from contributory willful and wanton negligence.

Defendant next contends that the trial court erred in excluding the testimony of his accident reconstruction expert witness, William Alroth. The trial court sustained an objection to the testimony and defendant made an offer of proof that the testimony of that witness would show that the decedent was traveling at the posted speed limit at the time her vehicle entered the median strip, that the decedent had attempted to regain control of the car after the wheels had left the pavement of the two eastbound lanes, and that the vehicle did not fly over the telephone wires north of the highway. Defendant argues that since none of the eyewitnesses observed the individual conduct of either the plaintiff or the decedent and only described the path of defendant's vehicle, Alroth's testimony was needed by the jury to determine the meaning of the actions of the automobile and the cause of the accident. The defendant also argues that Alroth's testimony was important to the defense in that it would contradict the testimony of the three sisters who testified for the plaintiff that the decedent's vehicle was traveling in excess of the posted speed limit and that it subsequently flew over the telephone wires north of the highway.

■■ In Illinois, accident reconstruction testimony may not be used as

a substitute for eyewitness testimony where the latter is available, nor may it be used in addition to eyewitness testimony unless it is necessary to rely upon knowledge and the application of principles of science beyond the ken of the average juror. (*Plank v. Holman* (1970), 46 Ill.2d 465, 264 N.E.2d 12; *Payne v. Noles* (1972), 5 Ill.App.3d 433, 283 N.E.2d 329.) In the instant case, five eyewitnesses testified as to the speed and path of decedent's auto. A sixth witness, the investigating police officer, also testified as to the path of the vehicle, based upon measurements which he had taken at the accident scene. Although none of the eyewitnesses had observed the actions of either the decedent or the plaintiff while inside the vehicle, this did not present questions for determination by the jurors which required scientific knowledge beyond that of typical jurors. These questions involved the driving actions of the decedent at the time of the accident, and a factual resolution of those questions did not necessitate expert evidence to supplement the eyewitness testimony which had been received. *McGrath v. Rohde* (1972), 53 Ill.2d 56, 289 N.E.2d 619.

■■ The defendant's additional argument that the expert testimony was admissible to contradict the prior testimony as to the vehicle's speed and path of travel is an attempt to justify this testimony, not as an aid to the determination of a fact question beyond the scientific ken of the jury, but as a challenge to the accuracy of previous testimony. Accident reconstruction testimony is not admissible for the purpose of impeaching credible eyewitness testimony. (*Payne v. Noles, supra.*) We find no error in the exclusion of the accident reconstruction testimony.

Defendant's final contention is that the trial court erred in instructing the jury as to the definition of willful and wanton conduct based upon Illinois law, whereas the Indiana law should have controlled the substantive issues in the case. The trial court refused Defendant's Instruction No. 1 which was a modification of a definition of willful and wanton negligence contained in *Mazza v. Kelly* (1970), 147 Ind.App. 33, 258 N.E.2d 171, and which provided:

> "When I use the expression 'willful or wanton conduct' I mean perverse conduct which is conscious and intentional and of such a nature that under the known existing conditions injury will probably result therefrom."

The trial court gave Plaintiff's Instruction No. 16, I.P.I. Civil 14.01, which provided:

> "When I use the expression 'willful or wanton conduct' I mean a course of action which shows an utter indifference to or conscious disregard for a person's own safety and the safety of others."

At the time of the accident involved herein, both Illinois and Indiana

barred recovery by a guest passenger against the host driver of a vehicle except in cases where the latter committed willful or wanton negligence. The question of what constitutes willful and wanton misconduct is one of substantive law and presented a conflict of law issue for the trial court.

■■ Formerly, Illinois had followed the *lex loci delicti* doctrine and had mechanically applied to such issues the law of the state where the injuries occurred. In 1970, the Illinois Supreme Court adopted the "most significant contacts" rule as the standard to be applied to conflict of law issues arising in multi-state tort actions. (*Ingersoll v. Klein* (1970), 46 Ill.2d 42, 262 N.E.2d 593.) Under this rule the local law of the state where the injury occurred should determine the rights and liabilities of the parties unless Illinois has a more significant relationship with the occurrence and with the parties, in which case the law of Illinois should apply. In *Ingersoll* the court further held that the new standard would apply retroactively to those cases filed in reliance upon the *lex loci delicti* doctrine unless a retroactive application would result in hardship. In the instant case, both plaintiff and decedent were residents of Illinois traveling together in Indiana. When the present suit was filed the estate of the decedent was then pending in probate in an Illinois court, and the defendant was acting as administrator therein. Indiana's only relationship was the fortuitous occurrence of the accident within its borders; it would appear to have no interest in this proceeding or occurrence other than in the possible violation of its traffic regulations. On the other hand, Illinois as the forum state and the domicile of all of the parties has a greater and superior interest in the administration of the estate of a deceased citizen, in the regulation of the driver-passenger relationship of its domiciled parties, and in the solution and disposition of the litigation between its residents. In considering the matters of governmental interest and policies and the other connecting factors, Illinois clearly has the more significant relationship with the parties and the occurrence than Indiana.

■■ Defendant has urged, upon oral argument, that a retroactive application of the "most significant contacts" rule to the instant case would result in hardship because the Indiana definition of willful and wanton conduct is more restrictive than that of Illinois. The only benefit the defendant would have if the Indiana definition was applied would be as to the degree of proof required to establish willful and wanton conduct. In our opinion, this does not present the type of hardship referred to by the Supreme Court in *Ingersoll* which would prevent the retroactive application of the new standard. (*Blazer v. Barrett* (1973), 10 Ill.App.3d 837, 295 N.E.2d 89; *cf. Cardin v. Cardin* (1973), 14 Ill.App.3d 82, 302

N.E.2d 238.) Accordingly, the trial court correctly applied Illinois law in defining willful and wanton conduct.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

McNAMARA, P. J., and McGLOON, J., concur.